Phebe A. Carmichael, Executrix, Appellant, *v.* Eliza Carmichael, Executrix, Respondent.

CONSTRUCTION OF WILLS.

Where a testator devises to his wife, during the term of her natural life, his entire estate, and, after her death, the same, share and share alike, unto his children who may at her decease be living, the estate does not vest in the children until the decease of the wife, and she cannot be required to account to any of the children, or their representatives, for the purpose of having the estate divided among them, or apportioned to any of them.

The further provision in such will, concerning one of his children, that his share shall be kept invested during his life, and the income therefrom be paid to him, coupled with a power to devise the principal, will not bear a construction adverse to the rights of the wife, as above defined, to enjoy the entire estate during her life. The share of such child in the estate is still contingent upon his surviving the wife, in which event only, does the estate, or any part thereof, vest in him, and then only subject to the incidents and conditions expressed in the will.

*G. O. Hulse,* for the appellant.

Daniel Carmichael just previous to his decease lived and resided at Binghamton, N. Y. He had been twice married. By his first wife he then had one child (Otis) living. He was about 19 years of age. By his second wife he then had five children living. He died September 3d, 1849, in Philadelphia, Pa., leaving the defendant his widow, and said six children him surviving. He was a wealthy man, and made his will a few hours before his death, no friends being present except his wife and father.

His son Otis did not live with his father and family, but had his residence in Middletown, N. Y., his father providing for him. This separation from his father was caused by the other members of the family. Otis had no property at the time of his father's death, and never had, nor had he ever engaged in any business, but was wholly dependent for his support upon his father. His father was very much attached to him.

Otis, at the time of his father's decease, was an invalid also, which was well known to his father, having incipient

consumption, which caused his death in two years after his father's decease.

Otis and plaintiff were married shortly after Daniel's decease, the engagement being prior thereto.

The defendant presented her husband's will for probate before the surrogate of Broome county. A special guardian was appointed for Otis, he being a minor. The guardian entered into an agreement, under seal, with the defendant and her co-executor, that he would not oppose the probate; and such proceedings were then had, that said surrogate admitted the will to probate. The executors never filed an inventory or rendered an account of their doings, as executors.

Otis had by his wife, the plaintiff, one child, and he is now living. He received from the executors two $300 payments only. He made his will, set out in the complaint, and subsequently died of his disease, consumption.

The defendant, at the time of the death of her husband, was a young and healthy woman, and is now living, and in good health. Her father, her co-executor, was an old man, and died in 1857. Otis died in 1852.

No money or other thing has been received from the estate of Daniel Carmichael by Otis in his life-time, except the $600. Nor has any been received since his death by plaintiff or her son, or any one for them, of either of them.

This action is brought to compel the defendant to account for her doings as executrix, and for decree of payment of such sum as she, the plaintiff, may be entitled to under such accounting.

The defendant has interposed a demurrer to the complaint, which Mr. Justice BARNARD, at Special Term sustained, and ordered judgment for defendant on demurrer, with costs. From which judgment this appeal is taken.

The plaintiff claims that Daniel Carmichael intended by his will, that one-sixth of his estate should be kept at interest during Otis' lifetime, and the interest, as received, paid to him; and upon his death, the principal of this share should be paid as Otis should by will direct. And we say both events happened—his decease, leaving a will.

The defendant, on the other hand, claims that Otis' share did not vest, but was contingent on his outliving the defendant; and the interest was not to accrue to him until her decease; in fact, that his share·has lapsed.

It is admitted by the demurrer that Daniel Carmichael's estate, at the time of his decease, was worth $60,000, and upward. This is alleged in the complaint.

I. If the relief prayed for is too broad, or embraces too much, or the plaintiff be not entitled thereto, it is not ground for a demurrer. (*Andrews* v. *Schaffer*, 12 How. 443; *Grafton* v. *Remsen*, 16 id. 32; *Bank of Havana* v. *McKee*, 20 N. Y. 360; *Emery* v. *Pease*, 20 id. 62; *Wood* v. *Brown*, 34 id. 344-5-6.)

II. Even if the plaintiff is not entitled to recover one-sixth of the estate with interest, as executor, she is entitled to the interest accrued thereon previous to her husband's death. This much was assets due him at the time of his decease. The interest being $1,610.

The above points being preliminary, we now turn to the main question in the case, and that is, what construction shall be put on Daniel Carmichael's will, and the principles of law applicable thereto, and bearing thereon? And we submit the following points upon this subject:

III. It is submitted that Otis' share of his father's estate vested in him upon the death of his father; that it was not contingent upon his outliving the defendant, nor liable to lapse. (Redf. on the Law of Wills, part 2, pp. 491–495, 506, 626–641, where will be found the English and American cases, also the New York cases on this question. See also 2 Denio, 18; *Patterson*, v. *Ellis*, 11 Wend. 260–269; *Kane* v. *Astor*, 9 N. Y. 113; *Tucker* v. *Bishop*, 16 id., 402; 4 Kent's Com. & note, 240, 10th ed.; *Van Wyck* v. *Bloodgood*, 1 Brad. Sur. 154; *Laroque* v. *Clark*, 5 N. Y. Sur.; *Moore* v. *Lyons*, 25 Wend. 119; *Borastons'* Case, part 3, Coke, 19; 1 R. S. 723, § 13; 4 Brad. 245; 4 Kent, 203, marg. p. 8.)

IV. Daniel Carmichael, at the date of his will, and at the time of his death, had six children — Otis, a child by his first wife, and five others by his then wife.

In making his will he divides or appropriates his estate into six parts, five of which the widow is to have the use of during her life, and the other part is to be kept at interest and invested during the life-time of Otis, and the rents, interest and income thereof paid to him as received, etc.

Otis' share vested in him on the death of his father, under the authorities cited in third point.   And because,

1. It is to be invested and kept invested during Otis' life-time.

2. The interest to be paid to him during his life-time, as received.

3. He is given the absolute disposal thereof by will, that is, the principal.

4. In default of any will, etc., it, the principal of his share, shall go to his right heirs.

Every one of these facts are evidence that the share shall vest in the legatee. (*Patterson* v. *Ellis*, 11 Wend. 267 *et seq.*; Redf. on Law of Wills, part 2, p. 612 [31–34], 631 [56, 57, 58, 59]; *Van Wyck* v. *Bloodgood*, 1 Brad. 171–178.)   A gift of the interest carries with it the principal. (*Tucker* v. *Bishop*, 16 N. Y. 405, 11 Wend. 298.)

V.  To hold that the share given to Otis lapsed by the death of Otis before the decease of defendant, would do violence to and destroy the testator's intentions.   Because,

1. By so doing we accuse the testator of withdrawing from his son a father's care and bounty.

2. Of casting this invalid and helpless son, without cause, penniless upon the charities of the world.   Diseased, which soon terminated his life, leaving the rest of the family to enjoy his wealth and bounty.

3. We shall destroy the special clause making provision for Otis.

His share could not be invested during his life-time, nor the rents, income and interest paid to him.

4. It will not pass by Otis' will, nor go to his right heirs.

VI.  There can be no objection to the property vesting in Otis on the death of his father, upon the ground that no

division can be made until the death of the widow. (*Tucker* v. *Bishop*, 16 N. Y. 402.)

It is submitted that the converse of the rule in this case is good law, and applicable here if the exigency shall arise. Besides,

The division referred to in the will must be applied and referred to the division the testator then had in his mind, to wit, one part to each child, there being six. (*Arcularius* v. *Geisenheinm*, 3 Brad. 75, 76; *Van Wyck* v. *Bloodgood*, 1 id. 171–178; *Everett* v. *Everett*, 29 N. Y. 75; 1 Jarman on Wills, 761.)

VII. Where the same thing is given in the same will to two different persons, the latter provision or limitation must prevail. (Redf. on Law of Wills, part 1, pp. 445, 446 [3–15].)

As where one gives all his property to his wife, and then gives a legacy to his sister. The sister is entitled to the legacy. (*Parks* v. *Parks*, 9 Paige, 124.)

VIII. All the books which treat of the construction of wills constantly repeat the formula, that the intention of the testator is the prevailing consideration in applying all rules of construction. (Redf. on Wills, part 1, p. 430, and cases cited. See rules for the construction of wills in this country and England, general and special, collated and illustrated, with references to decisions. Id. pp. 420–401; *Dubois et al.* v. *Ray et al.*, 35 N. Y. 162, 175, prop. 2; 4 Kent Com. 10th ed. p. 239, note 1; *Johnson* v. *Valentine*, 4 Sand. Sup. 36; *Smith's Appeal*, 23 Penn. 9; 1 Bradf. 154 *et seq.*; *Rowe* v. *Phillips*, 24 N. Y. 470.)

IX. It is submitted that the words, " it being distinctly understood," in the testator's will, should be read, " except," which, to us, seems more appropriate to convey the idea and intent of the testator; for he evidently meant to except Otis' share from the general bequest, or devise for subsequent provision.

X. It is a fact that needs no comment, apparent in this will, that the person who drew it did not know his business; for it is perfectly palpable that, upon the death of both exe-

cutors, the "heirs and assigns" of the survivor would not have any business with the estate.

Therefore, it is submitted that no importance is due to the words, "by my surviving executor, his heirs and assigns;" that he was just as likely to put this in, as the words, "by my executors, and the survivor of them," which would have made the will intelligible.

Whatever the fact may be in reference to these words, we are authorized, and it is the duty of the court, if necessary, to carry out the intent of the testator — to expunge, supply, transpose and change words, in order to arrive at that intent. (See authorities cited [point 8th] above.)

XI. The great object of the testator, and the controlling words in this will, it seems to us, are, " in trust, to keep the same well and securely invested during the life-time of my said son (Otis), and to pay over to him, my said son, the rents, income and interest thereof as received, and to dispose of and apply the principal of said share as my said son may, by his last will and testament, or any instrument in the nature thereof, direct, limit and appoint," etc.

There is no ambiguity here; the words are natural and sensible. It is, that the share of Otis, excepted from the general devise to the defendant for life, is to be invested during his life-time, and the interest thereon paid to him as received, etc.

Nothing could be more natural than for the testator to set apart the share of his son by his first wife, and make provision for him, independent of his other children; and that his executors should invest it for him during his life-time (which his father had every reason to know was short), he being unable to invest it himself, or his father not caring to put him to that trouble, on account of his health.

XII. Where is the authority to postpone the investment of Otis' share until the widow's decease, or to postpone the payment of the interest, rents or income of the same as received to Otis immediately on the death of his father, or to postpone the payment of the principal of the said share, as directed by Otis' will?

It can only be found in the gift to the defendant for life of the whole estate by the testator.

We answer, that this gift must yield to the exception which therein follows; for otherwise, Otis was disinherited. This the testator never intended. He did not intend to leave this helpless son a pauper.

XIII. The court is authorized and required to look at all the surrounding circumstances, the state of the testator's family, his property, and the circumstances under which the will was made, in order to get at the intent of the testator. (*Myers* v. *Eddy*, 47 Barb. 263; Redf. on Wills, part 1, pp. 436, 437 [24]; 5 Paige, 458. 459; 9 id. 528; 2 Comst. 436; 35 N. Y. 175.)

I have endeavored to state the facts at the beginning of my points, and will only add that this will was made when the testator was in the last stages of cholera, only a few hours before his death. He did not read it, and no one was present except the defendant, her father, and the person who wrote the will.

XIV. And lastly, we claim that Daniel Carmichael intended and does give all his property to the defendant (excepting one-sixth thereof) for and during her natural life, the use and income whereof she could use for the support of herself and children. But one-sixth was to be invested for the use of Otis during his life-time and the interest paid to him for his support, and upon his death the principal should be applied as directed by his will.

This we think is the only way in which the will can be made to harmonize with the intent of the testator. It is true the will may bear another construction, but it will defeat the intent of the testator, which in construing wills is the guiding star to the judicial mind and the law of the will. (*Myers* v. *Eddy*, 47 Bar. 263.)

XV. But it is alleged that the plaintiff cannot receive Otis' share because he has willed it to his son.

Upon reading Otis' will it will be seen that the plaintiff is entitled to a legacy of $500 per year during her natural life from his estate; also she is entitled and is given in trust, for

the maintenance and education of his son Otis, all the issues, rents and annual proceeds of all his real and personal property, and until the son shall become twenty-one years of age.

XVI. The executor must collect in, take care of the estate, and pay the legacies; and how is Phebe Ann Carmichael to get her legacy or the interest, except through the executor of Otis? Or who shall have the care of Otis' estate after his death, unless it be his executor? Or who can call Daniel Carmichael's executor to account except Otis' executor?

We think there is no doubt but that the plaintiff as executor of Otis Carmichael, can and must call Daniel Carmichael's executor to an account.

She has an interest, and that is all that is necessary, Otis, her husband, could, and his executor can if he could. (*Wood* v. *Brown*, 34 N. Y. 343 *et seq.*)

XVII. Still, this question depends upon the main question in the case. For if Otis' share of Daniel's estate did not vest in him on his father's decease so as to enable him to will it, and has lapsed by his decease before the life tenant, so that his legatees or right heirs are cut off, then this plaintiff has, it is admitted, no cause of action, or interest sufficient to call defendant to account. But we say the share intended for Otis by Daniel, did vest in him on the death of his father; and having vested, the plaintiff, as executrix of her husband Otis, has a cause of action, and an interest such as entitles her to call the defendant to an account.

This she may do in this action and in this form; the jurisdiction will not be questioned. (*Wood* v. *Brown*, 34 N. Y. 344–6; *Rogers* v. *King*, 8 Paige, 210; Mitford Pl. 45.)

The words "to my children who may be then living," it is submitted include grandchildren. (37 N. Y. 52.)

*John C. Dimmick*, for the respondent.

I. The action is brought in the name of the executrix of Otis Carmichael, deceased.

It is to recover one-sixth of the estate, real and personal, of Daniel Carmichael, deceased, for the benefit of the heir

of Otis, it being assumed that Otis, as a legatee under his father's will, was entitled, during his life-time, to interest on one-sixth of the estate, and that on his death the principal, in default of direction by him, should be paid to his surviving heir.

The action, therefore, should have been commenced in the name of the heir, or at least he should have been joined with the plaintiff as a party.

If the appellant's construction of the will of Daniel Carmichael is to be regarded as correct, it follows that Otis' surviving heir is the beneficial owner of the estate sought to be recovered, and consequently the real party in interest.

This proposition is made entirely clear by reference to Otis' will, wherein he bequeaths all property which may belong to him to his son Otis, the heir in question.

1. Every action must now be prosecuted in the name of the real party in interest (Code, § 111; *Cummings* v. *Morris*, 25 N. Y. 625), and the relief demanded furnishes the test to determine who should be joined as a party. (*Hubbard* v. *Eames*, 22 Barb. 597.)

2. The rule above cited is not affected by section 113 of the Code, which provides that an executor, etc., may sue without joining with him the person for whose benefit the action is prosecuted. (*Towner* v. *Tooley*, 38 Barb. 598; *Hobart College* v. *Fitzhugh*, 27 N. Y. 130.)

That section has no application to an action brought to obtain the construction of a will, and the direction of the court. (Id. 134.) This action is an action to obtain the construction of the will of Daniel Carmichael, and it affects the rights not only of the heir of Otis, but also the rights of all the legatees named in the will of Daniel Carmichael.

It is not, therefore, a case in which the court may determine the controversy between the parties before it without prejudice to the rights of others. Nor would the legatee under Otis' will, nor the legatee under Daniel's will (they not being parties to the suit), be bound by the judgment of the court. They could, notwithstanding a judgment in this action, litigate the whole matter over. (Id. 134.)

II. The estate claimed in the complaint under the will of Daniel Carmichael never vested. The exact terms of the gift are as follows:

"After the payment of all my debts, I give, devise, and bequeath all and singular my estate and property of whatsoever kind, and wheresoever the same may be situate, unto my beloved wife Eliza, for and during the term of her natural life, and from and after her decease; then I give, devise, and bequeath the same unto my children who may be then living, in equal parts, share and share alike."

1. This provision plainly imports that the testator intended to make the vesting of the gift depend upon two conditions, viz., first, upon the decease of his widow Eliza, and, second, upon the condition that it should then vest only in those of his children who should survive her. Both of these conditions are made conditions precedent by the testator to the vesting of the gift; hence it is incumbent upon the appellant, before she can establish her right to recover in this action, to show that both of the contingencies have happened.

2. It is conceded in this case that the conditions referred to have failed; that Otis died in the life-time of the widow, and that the latter is still living. Neither Otis nor his representatives, therefore, can claim any thing by virtue of this will.

3. The question upon which the vesting or not vesting of a gift turns, is determined by the inquiry as to whether it is immediate, and the time of payment or of enjoyment only is postponed, or is future and contingent, depending upon the beneficiary arriving of age, or surviving some other person or the like. (1 Jarman on Wills, 760; *Gillman* v. *Reddington*, 24 N. Y. 9; *Crosby* v. *Wendell*, 6 Paige Ch. 548.)

By this will the legacy to Otis was a contingent legacy (8 Ves. 547; 4 Russ. 92; *Hamlin* v. *Osgood*, 5 N. Y. Sur., Redf. 409), and the term of the gift gave him no right of possession on the death of the testator. (*Jackson* v. *Winnie*, 7 Wend. 47; *Onley* v. *Hull*, 21 Pick. 311.)

This was not a gift of a legacy, and then a postponement of the time of payment; on the contrary, the date of the vesting and the time of payment were made one and the

same, to wit, the day of the death of the widow; and the persons in whom the estate is then to vest, are clearly defined to be such children of the testator as shall be living on that day.

Clearly, therefore, the parties claiming this estate, must bring themselves within the class thus described and defined in the will, and it is absolutely certain that neither the plaintiff, nor any person through whom she claims, can ever by possibility be or become one of that class.

III. It is argued that the clause following the devise authorizing Otis in his last will to direct the manner in which the principal of the gift should be applied, enlarged the gift as to him, and empowered him, at his decease, to make absolute disposition of the one-sixth of the estate. The clause itself, when read in connection with the gift, which is its immediate antecedent in the same sentence, completely refutes this proposition. It in no sense enlarges or increases the nature of the gift, nor was it intended to, nor does it change the time or the date of the vesting.

In fact, these could not be varied in the manner claimed, without defeating the devise to the widow, which is in language too plain to admit of but one construction.

This clause applies exclusively to the manner in which Otis, after the vesting, was to be permitted to enjoy "the part or share" which was to go to him "under said division or appropriation." It was, in fact, a special condition imposed on the gift to him, and, by putting the principal beyond his reach, was intended to limit and restrict him during his life-time, to the use of "the rents, income and interest thereof." It was, indeed, the making of a distinction of some significance between the children, but in view of the limitation and restriction which it placed solely upon the gift to Otis, it must be regarded as one which was intended, and for a justifiable reason.

IV. The plaintiff, not feeling quite sanguine that the plain terms of the will in question would admit of the construction contended for, makes reference in her complaint to what are termed "surrounding circumstances," to aid her if pos-

sible in influencing such a construction, and to establish that the testator's intent was really different from the one which is defined by the unambiguous language of the will itself.

Without stopping to consider whether the "surrounding circumstances" referred to, and which are set out in the complaint, could have the effect claimed for them in any case, it is sufficient to say, that, under well settled rules, they cannot have any possible bearing in determining the issue in this.

The rules are:

1. Extrinsic evidence and collateral circumstances are never admissible to control or influence the construction of a will which is founded upon plain language and well settled rules. (*Bunner* v. *Storm*, 1 Sand. Ch. 357; *Mann* v. *Mann*, 14 Johns. 1 [affirming 1 Johns. Ch. 231]; *Wolfe* v. *Van Nostrand*, 2 N. Y; 2 Comst. 436.)

2. The intent of the testator is always to be gathered, if possible, from the words of the will itself. (*Mann* v. *Mann*, 14 Johns. 1; *Jackson* v. *Luquere*, 5 Comst. 221; *Arcularius* v. *Grisenhainer*, 3 Bradf. 64; *Sweet* v. *Grisenhainer*, 114; *Crosby* v. *Wendell*, 6 Paige, 548.)

3. And where the testator's intent is manifest, the rule is inflexible that it must prevail unless it be contrary to some positive rule of law. (*Crosby* v. *Wendell*, 6 Paige, 548.)

In this case there can be no question of the applicability of these rules. The will is founded upon language exceedingly explicit and expressive, and the intent of the testator is perfectly manifest. He gives to his beloved wife for and during her natural life, his entire estate both real and personal, and after her death, he directs it shall go to such of his children "*as may be then living.*" It, therefore, is apparent that in making his will, the testator intended to secure to his widow a life interest in his entire estate, as it should be left by him at the time of his decease, and this life interest thus secured to her, independent of every other consideration, cannot be disturbed, impaired or defeated without defeating both the testator's intent and the will itself.

VI. As to the persons who may ultimately become entitled to the estate of Daniel Carmichael, that is a question which

by the terms of his will, can only be determined " from and after" the decease of his widow.

Clerke, J. Daniel Carmichael died September 3d, 1849, leaving the defendant, his widow, and six children, him surviving. The eldest of them (Otis) was the child of a first marriage. He did not live with his father, but lived in Middletown, in this State, where his father provided for him. At the time of his father's death, he was an invalid, and he died about two years afterward. He married the plaintiff soon after his father's death, the engagement having been made prior to that event; he left one child. Daniel Carmichael, shortly previous to his death, made a will, of which the following is a copy:

" *Know all men by these Presents*, That I, Daniel Carmichael, now lying ill at the city of Philadelphia, in the State of Pennsylvania, do hereby make, publish and declare these presents as and for my last will and testament, hereby constituting and appointing my dear wife, Eliza Carmichael, and Isaac Otis, the executors hereof.

" After the payment of all my debts, I give, devise and bequeath all and singular my estate and property, of whatsoever kind, and wheresoever the same may be situate, unto my beloved wife Eliza, for and during the term of her natural life ; and from and after her decease, then I give, devise and bequeath the same unto my children, who may be then living, in equal parts, share and share alike—it being distinctly understood that the part or share of my son, Otis Carmichael, under said division or appropriation, shall be held and invested by my surviving executor, his heirs and assigns, in trust, to keep the same well and securely invested during the life-time of my said son, and to pay *over* to him, my said son, the rents, income and interest thereof as received, and to dispose of and apply the principal of said share as my said son may by his last will and testament, or any instrument in the nature thereof, direct, limit and appoint. And in default of such direction, then to the right heirs of my said son, under the intestate laws of New York.

" Witness my hand and seal, this second day of September, in the year eighteen hundred and forty-nine.

" DANIEL CARMICHAEL. [L. s.]

"Edwin Coolidge,<br>
R. S. Barnes,   } *Witnesses.*"<br>
Constant Guillott.

This will was admitted to probate on or about the 15th of October, 1849, before the surrogate of the county of Broome. Otis Carmichael, previous to his death, made a will, by which be gave to his wife (the plaintiff) the annual sum of $500 during her natural life; and he further gave unto her, in trust, for the maintenance and education of his son, all the annual proceeds of his real and personal property, until his son should attain the age of 21 years. He secondly devised and bequeathed unto his son, all his real and personal property, subject to the annual payments given to his wife.

This action is brought by the widow of Otis, for the purpose of compelling the defendant, executrix of the will of Daniel Carmichael, to render an account of his property and effects, which may have come into her hands as such executrix; and, after the accounting, it is prayed that the same may be divided, and that the defendant be adjudged to pay over to the plaintiff, one-sixth part of the estate of Daniel Carmichael, with interest thereon from January 1, 1850.

The defendant demurred to the complaint, upon the grounds, first, that the plaintiff had no legal capacity to sue, and, second, that the complaint does not state facts sufficient to constitute a cause of action.

The demurrer was sustained, both at the Special and General Term.

The demurrer was properly sustained. The widow of Daniel Carmichael is living, and, by the express provision of his will, she is entitled to all the use and enjoyment of his property during the term of her natural life; and she is under no obligation to account to any of the children, for the purpose of having it divided among them. The estate does not vest in remainder until her death; and then it vests

only in those children who shall be living at the time of her death. The plaintiff, under the will of Otis Carmichael, acquired no estate or interest in the property of Daniel Carmichael, and has, in fact, no standing in court.

The judgment should be affirmed, with costs.

Judgment affirmed.