GEORGE D. PURDY et al., Appellants, *v.* SAMUEL A. HAYT et al., Respondents.

Where the construction of a will is necessary to determine questions arising on the accounting of the executors, the surrogate has jurisdiction to pass upon the construction ; this attaches as incident to the proceeding. The provision of the Revised Statutes (1 R. S. 723, § 17) declaring that " where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, and upon the death of those persons the remainder shall take effect," refers only to vested, not to contingent remainders, and executes the remainders in possession only in favor of such ascertained persons as, except for the void life estate, would under the will or deed be entitled to the immediate possession.

Where, therefore, the gift in remainder is upon a contingency which has not happened at the time of the death of the second life tenant, the provision does not apply, and the gift is invalid.

The will of D gave his real estate to his sisters J. and C. "during their respective lives," and after their deaths directed it to be sold by the executors, the proceeds to be invested, and the income to be paid by them to E., "during her life, and at her death the principal to be divided equally between any children she may leave ;" in case of her "not leaving lawful issue," the principal was given to other parties named. The two sisters named and E. survived the testator. The sisters have since died, J. dying first, and thereafter the executors sold the real estate. E. is still living and has two children. On final accounting of the executors, *held*, that the devise to the testator's sisters vested in them a life estate in the land with cross remainders, that they took as tenants in common, not as joint tenants ; each taking a distinct and several freehold for life in one-half of the farm ; that the remainder given to the children of E. was contingent; that upon the death of J. and the consequent termination of her life estate, a second life estate vested in C., and upon her death the limit of the statute, as to that share, was reached, the third life estate in E., attempted to be created, was void, and as the remainder could not then take effect, because it could not be ascertained until the death of E., who would be entitled to take, it was void and the title to the undivided half of the land descended to the testator's heirs at law, subject to the power of sale, and they were entitled to one-half the proceeds of sale and to the subsequently accruing income ; but that the devise to E. was valid as to the share of C., as upon her death but one life estate therein had run, and she was entitled to the income from one-half the proceeds of the sale during life ; also that the remainder, as to this share, was valid.

It is no objection to the validity of a remainder in fee that it is limited in favor of persons not in being when the limitation is created, or who are not ascertainable until the termination of the precedent estate, provided the contingency upon which it depends must happen within or not beyond the prescribed period for the vesting of estates.

Where the precedent or particular estate is given to several persons as tenants in common, the remainders limited upon the estates of part of the tenants in common may fail without affecting the remainders limited upon the estates of the others.

(Argued March 19, 1883 ; decided June 5, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 12, 1882, which affirmed a decree of the surrogate of the county of Dutchess, made upon the final account-

ing of the executors of the will of Chauncey Delevan, deceased.

Delevan died in 1864, leaving a will, by which he gave his real estate, consisting of a farm at Fishkill, to his sisters, Jane and Catharine, " during their respective lives," and after their deaths he directed it to be sold by his executors, the proceeds to be invested and the income to be paid by them to his niece, Elizabeth Brinkerhoff, daughter of his sister Betsey, " during her life, and at her death the principal to be divided equally between any children she may leave, or if but one such child, the whole to be paid to that one." But should said " niece, Elizabeth, die, not leaving lawful issue," then the principal was given to other parties named in the will.

The two sisters of the testator, Jane and Catharine, survived him. His sister Jane died in 1865, and his sister Catharine in 1867. His niece, Elizabeth Brinkerhoff, also survived him and is still living. She has two children, but it does not appear when she was married or whether the children were born before or after the death of the testator's sisters, Jane and Catharine. The executors, on the 8th day of February, 1868, sold the farm, the net proceeds being $19,617. They invested the proceeds of the sale, and thereafter paid the net income thereof, so far as received up to the time of the accounting, to the testator's niece, Elizabeth Bartow (formerly Brinkerhoff), and they now have in their hands the principal of the fund. On the 15th of June, 1881, the executors applied to the surrogate for a final accounting, and a citation was issued and served on all the parties interested. The appellants, who are some of the heirs at law, appeared on the accounting and objected to the credits in the account to the executors for income paid to Mrs. Bartow, on the ground that the provision in the will directing the executors to pay the income from the sale of the farm to her was void, and that the estate of the testator descended, on his death, to his heirs at law, as in case of intestacy. The surrogate declined to pass upon the construction of the will for want of jurisdiction, and made a decree, allowing the accounts as presented. The General Term, on appeal,

affirmed the decree on the ground that, assuming that the life estate given to Mrs. Bartow was invalid, the only consequence would be that the remainder to her children vested immediately on the death of the testator's sisters, Jane and Catharine, and that, therefore, the appellants had no interest in the disposition of the income.

*Thomas Nelson* for appellants.    The clause of the will of the testator making Elizabeth Bartow, during her life, the beneficiary of the income of the proceeds of the sale of the real estate and the limitation of the estate over, at her death, to her children is void, being in violation of the statute against perpetuities.    (1 R. S. 723, §§ 14, 15 ; *Amory* v. *Lord*, 5 Seld. 404.) It makes no difference that there are two life estates in the land and one life estate in the proceeds of the sale of the land. (*Savage* v. *Burnham*, 17 N. Y. 572.)    Remainders limited upon a limitation which suspends the power of alienation for more than two lives in being at the death of the testator are void.    (*DeBarante* v. *Gott*, 6 Barb. 492 ; *Vail* v. *Vail*, 7 id, 241 ; *McSorley* v. *Wilson*, 4 Sandf. Ch. 515 ; *Hones' Ex'rs* v. *Van Schaick*, 20 Wend. 564 ; *Knox* v. *Jones*, 47 N. Y. 397, 398 ; *Smith* v. *Edwards*, 88 id. 92 ; *Chipman* v. *Montgomery*, 63 id. 233 ; *Woodruff* v. *Cook*, 61 id. 641 ; *Schettler* v. *Smith*, 41 id. 347.)

*Milton A. Fowler* for guardian *ad litem*, *et al.*, respondents. The decision of the surrogate that he had no jurisdiction to determine the validity or invalidity of a trust was erroneous. (*Riggs* v. *Cragg*, 89 N. Y. 479.)    The gift of the use and occupation of testator's farm to his two sisters during their respective lives was valid, however the gift of the use of the proceeds to testator's niece may be determined to have been. (*Woodruff* v. *Cook*, 61 N. Y. 638.)    The remainder of the estate, whether it be in the land or its proceeds, vested on the death of the testator, Chauncey Delevan, in the children of his niece, Elizabeth Bartow, whether such children were born or unborn.    (*Livingston* v. *Greene*, 52 N. Y. 118 ; *Ackerman*

v. *Gorton*, 67 id. 63 ; *Monarque* v. *Monarque*, 80 id. 321 ; *Harrison* v. *Harrison*, 36 id. 543 ; *Smith* v. *Edwards*, 88 id. 92 ; 29 id. 39, 75.)

*Thomas J. Swift* for executors, respondents.   The trustees and executors cannot be held to the exercise of greater fore-thought than that of a man of ordinary prudence at that time and under the circumstances.   (*McCabe* v. *Fowler*, 34 N. Y. 318 ; *Ormiston* v. *Olcott*, 84 id. 339 ; *Lansing* v. *Lansing*, 45 Barb. 182.)

ANDREWS, J.   The surrogate erred in declining to entertain jurisdiction to construe the will.   The construction of the will was necessary to determine the questions arising on the ac-counting, and in such a case jurisdiction to construe a will attaches as incident to that proceeding.   (*Riggs* v. *Cragg*, 89 N. Y. 479 ; *In re Verplanck*, 91 id. 439.)   It becomes necessary, therefore, in deciding this appeal, to consider the dispositions of the real estate made by the testator, and to de-termine as to their validity.

It is claimed on the part of the appellants that by the will three successive life estates were created in the testator's farm, viz., one to continue during the joint lives of the testator's sisters, Jane and Catharine, another for the life of the survivor, and a third in the proceeds for the life of Elizabeth Brinker-hoff.   If this claim is well founded it is, we think, impossible to resist the conclusion that both the life estate given to the testator's niece, Elizabeth Brinkerhoff, and the remainder to her children, are void, the life estate by force of the express terms of section 17 of the article of the Revised Statutes re-lating to the creation and division of estates, and the remain-der because it suspends the power of alienation beyond the period allowed by law.   How far the claim of the appellants can be sustained will be now considered.

It is provided by the seventeenth section of the article of the Revised Statutes, before referred to, that " successive estates for life shall not be limited unless to persons in being at the crea-

tion thereof; and where a remainder shall be limited on more than two successive estates for life all the life estates subsequent to those of the two persons first entitled thereto shall be void, and upon the death of those persons the remainder shall take effect in the same manner as if no other life estates had been created." (1 R. S. 723, § 17.) The prohibition against the creation of more than two successive life estates in the same property has no necessary connection with the law of perpetuities. There is no suspense of the power of alienation of land by the creation of successive life estates therein unless they are contingent. Any number of successive vested life estates may be created without violating the statute of perpetuities. The prohibition against creating more than two successive life estates in the same property applies to such estates, whether vested or contingent. The policy of the prohibition, where applied to vested and therefore alienable interests, need not be considered. It is sufficient to say that it was regarded by the legislature as not imposing an undue restraint upon the owner of property, and the provision is in harmony with the general rule prescribing the period during which the power of alienation of land may be suspended, viz., two lives in being at the creation of the estate. The statute, however, does not avoid the whole limitation where more than two successive life estates are limited. It permits the first two to take effect, avoiding those only which are in excess of the permitted number.

So also the seventeenth section preserves a remainder limited on more than two successive estates for life. But we apprehend that the section must be construed as referring to vested, and not to contingent remainders. It cannot in reason, or by its true construction, be held to apply to the latter. Where the right of the remainderman is vested, and the right of possession only is postponed, the statute, in case of three or more precedent estates for life, accelerates the period fixed by the will or deed for the vesting of the remainder in possession, and vests it immediately upon the termination of the two estates for life first created. The statute so far overrides the

precise intention of the grantor or testator, as expressed in the will or deed, but as the possession in the remainderman was postponed, presumably ·for the purpose of allowing an intermediate life estate to run, and that purpose being defeated by section 17, the statute, by accelerating the remainder, gives effect as near as may be to the intention of the creator of the estate. But where the gift in remainder is upon a contingency, which has not happened at the time of the death of the second life tenant, so that it cannot then be known who will be entitled in remainder according to the terms of the instrument creating the estate, the statute, we conceive, can have no application.

The construction that section 17 applies only to vested remainders, is moreover, sufficiently plain upon its language. The remainder, the section says, is to take effect in the same manner *as if* no other life estate had been created. Where the remainder was contingent when the life estate commenced, and remains so at the death of the tenant of the second life estate, it would not vest, although no other life estate had been created, and the statute gives effect to remainders only in the same manner as if limited upon two life estates instead of three. It is plain we think that the statute only executes the remainder in possession in favor of such ascertained persons as, except for the void life estate, would under the terms of the will or deed, be entitled to the immediate possession. (See *Knox* v. *Jones*, 47 N. Y. 397; *Smith* v. *Edwards*, 88 id. 104.)

We are now prepared to consider the nature and character of the several estates for life, and in remainder, created by the will. We are of opinion that by the true construction of the will, the devise to the testator's sisters, Jane and Catharine, vested in them a life estate in the farm as tenants in common, with cross-remainders. That they took the estate devised, as tenants in common, is declared by the express language of the statute. The statute declares that " every estate granted or devised to two or more persons in their own right, shall be a tenancy in common, unless expressly declared to be a joint tenancy." (1 R. S. 727, § 44.) By the common law a

grant or devise to two or more persons, without more, created a joint tenancy. (*Lorillard* v. *Coster*, 5 Paige, 228.) This rule of the common law was abrogated by the legislature at an early period (1 Green. Laws, 207, § 6), and the rule as then enacted, and re-enacted in the Revised Statutes, has ever since been the law of this State. It was said by NELSON, J., in his opinion in the Court of Errors, in the case last cited, that in order to create an estate in joint tenancy, since the Revised Statutes, it was not necessary that the words *joint tenancy* should be used, but that any other expression clearly imputing such an intent, would be sufficient. (*Coster* v. *Lorillard*, 14 Wend. 342.) In that case the real estate of the testator was devised to his brother and twelve nephews and nieces *in trust* to pay over and divide the rents and profits of his real estate " to and among the twelve nephews and nieces during their natural lives, and to the survivor and survivors of them equally, to be divided between them, share and share alike," and Judge NELSON was of opinion that this language created a joint tenancy in the beneficiaries, basing his opinion upon the words of survivorship in the will, the right of survivorship being the principal incident of that estate. (4 Kent, 360.) The chancellor held, when the case was before him, that the interests of the nephews and nieces was in the nature of a tenancy in common for life, with cross remainders. (5 Paige, 229.) It is not material to consider what view of the limitation in that case was the correct one. In this case there are no words of survivorship, and no words from which the intention to create a joint tenancy in the estate devised to the two sisters clearly appears, and nothing short of this at least will satisfy the language of the statute. But it was manifestly the intention of the testator that the survivor of the two sisters should succeed for life to the interest of the sister first dying. The testator gives to the two sisters the use and occupation of the farm during their respective lives, and the intent that the surviving sister should have the use of the whole farm after the death of the other is clearly indicated by the restriction of the power vested in the executors to sell the farm, to a sale to be

made "after the decease of my sisters, Jane and Catharine," and a sale before that time would have been unauthorized. But the purpose of the testator, that his surviving sister should enjoy the whole estate after the death of the other, can be accomplished without construing the original estate in the two as a joint tenancy. There seems to be no objection to a limitation to two as tenants in common for life, and of the share of the one first dying to the survivor for life. (See cases cited by NELSON, J., 14 Wend. 338, *et seq.*) The raising of cross remainders by implication is not unusual, and where such an implication is justified by the language of the will and will accomplish the purpose of the testator, it is the duty of the court so to construe the will as to give effect both to the statute and to his intention. (1 R. S. 748, § 2.)

The remainder given to the children of the testator's niece Elizabeth is contingent, both within the rule of the statute and of the common law. It is inferable from the facts stated that no children of the testator's niece were born until after his death, nor, so far as appears, until after the death of his two sisters. The remainder is limited to any children of the testator's niece, which " she may leave," and the gift over takes effect in case of her death, "not leaving lawful issue." The remainder is not to the children of the testator's niece, as a class, but to such children as she may leave at her death. The children now living may not survive their mother, and whether they will ever be entitled to take under the will depends upon that contingency, and whether any of her present children will survive her cannot, of course, be known until her death. This brings the remainder precisely within the statute definition of a contingent estate, which declares that future estates are contingent whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain, and within the fourth class of contingent remainders mentioned by Mr. Fearne. (1 R. S. 723, § 13 ; Fearne on Contingent Remainders, 9.) In this case the remainder, when created, depended upon a double contingency, viz.: the birth of children to the testator's

niece and their survivorship of the mother. One of these contingencies has happened, the other is still uncertain. That the remainder in this case is contingent, is, we think, settled by decisions in this State upon similar language, in cases arising since the Revised Statutes. (*In re Ryder*, 11 Paige, 185; *Savage* v. *Burnham*, 17 N. Y. 571; *Carmichael* v. *Carmichael*, 4 Keyes, 346.)

Having thus ascertained the nature of the estates for life and in remainder given by the will, it only remains to apply the test of the statute to determine their validity. The law permits, as we have seen, the creation of only two successive estates in the same property. The two sisters of the testator took, as we have held, an estate in the farm as tenants in common with cross remainders for life. The life estate of his sister Jane, who first died, terminated on her death, and her enjoyment constituted one life estate in her share. A second life estate in that share then vested in her sister Catharine, and was spent at her death. The limit of the statute as to that share was then reached, and no subsequent life estate therein could be limited either in the land or the proceeds. The third life estate in the proceeds of that share attempted to be created in the testator's niece Elizabeth was therefore void, and the *corpus* of the share vested in the children of Elizabeth then living by force of the gift in remainder, and the seventeenth section of the statute, or descended on the death of the testator's sister Jane to the testator's heirs at law, as in case of intestacy. The remainder could not take effect for the reason that it was contingent, and the remaindermen were not ascertained, and could not be until the death of the testator's niece. The other alternative alone remained, viz.: the devolution of the title in the undivided half of the farm upon the testator's heirs, subject to the power of sale vested in the executors. The result, therefore, is that there was no valid disposition of the fee in the undivided half of the farm, and it descended to the testator's heirs, who, upon the sale under the power, became entitled to one-half of the proceeds of the

sale, and consequently to the subsequently accruing income therefrom.

But the devise to the testator's niece of a life estate in the proceeds of the farm, with remainder to her children, though void as to the share devised for life to the testator's sister Jane was, nevertheless, valid as to the share of his sister Catharine. When his sister Catharine died, but one life estate in her original share had run. On the death of the testator she took a distinct and several freehold estate for life in one-half of the farm, although her particular share was not set off or partitioned, and of that share, though undivided, she was solely and severally seized. (1 Co. Litt. 875; 4 Kent, 368; *Collumb* v. *Read*, 24 N. Y. 505.) There was no devolution of her share upon her sister, for the plain reason that her sister first died. There was, therefore, no objection to a limitation of an additional life estate in the share of the one of the testator's two sisters who should survive, for this would be simply giving a second life estate in that share; and as it is the duty of a court to carry out the intention of a testator so far as is consistent with the rules of law, we think the devise to the testator's niece Elizabeth for life should be held valid to the extent of entitling her to the income from the half of the proceeds of the sale of the farm. The validity of the remainder as to this share may also, we think, be sustained. Whether we regard the limitation as one of real or personal property, the absolute title will vest at the expiration of two life estates, viz. : the life estates of the testator's sister Catharine, and of his niece Elizabeth. The death of the latter will point out and ascertain the persons entitled in remainder, and this satisfies the statute.

It is no objection to the validity of a remainder in fee that it is limited in favor of persons not in being when the limitation is created, or not ascertainable until the termination of a precedent estate, provided only that the contingency upon which the remainder depends must happen within, or not beyond the termination of the prescribed period for the vesting of estates.

(*Gilman* v. *Reddington*, 24 N. Y. 9; *Manice* v. *Manice*, 43 id. 303.)

The question as to whether the remainder can be sustained as to the share of the sister of the testator, last dying, in view of the statute of perpetuities, is in one aspect a novel one. It is apparent that the power of alienation was suspended by the contingent limitation in remainder, and such suspense could not lawfully exceed two lives, and in a single case, a minority in addition. There was, under the will, a limitation for three lives as to the share of one of the two sisters of the testator, but upon which share that limitation would operate, could not be known until one of the sisters should die, and that event would render it certain that the unlawful limitation in remainder, was of the share of the sister so first dying. The question therefore arises, whether it wholly defeats the remainder, that it could not be ascertained, until one life estate was spent, which of the shares would be unlawfully suspended. We perceive no good reason why such a result would follow. The rule is well settled that where by the terms of the instrument creating an estate, there may be an unlawful suspension of the power of alienation, the limitation is void, although it turns out by a subsequent event, as by the falling in of a life, no actual suspension beyond the prescribed period, would take place. (*Hawley* v. *James*, 16 Wend. 121.) But this rule relates to cases where, if the limitations take effect, in their order, as contemplated by the grantor or devisor, some of the estates limited will not vest within the prescribed period, and they are cut off as too remote, although it may happen that the estates so cut off, would, by events subsequently happening, take effect within two lives.

The case here is not, we think, within this principle. In the one case the vice affects the whole limitation, and in the other, the limitation of a part only of the property devised, the only uncertainty being as to the part the title of which will be unlawfully suspended, and this will be ascertained within the period of a single life. Where the precedent or particular estate is given to several persons as tenants in com-

mon, the remainders limited upon the estates of a part of the tenants in common, may fail, without affecting the remainders limited upon the estates of the others. (Fearne on Rem. 193; *Hawley* v. *James, supra.*) We think, therefore, the unlawful suspension under the will in question, affected only the share of the estate given for life to the testator's sister Jane.

For these reasons, the judgment of the General Term and the decree of the surrogate should be reversed, and the case remitted to the surrogate to take the accounting upon the principles stated in this opinion.

All concur, except RUGER, Ch. J., not voting.

Judgment accordingly.