Testator bequeathed to each of three legatees the income on $3,000, and provided that on the death of either, leaving children, the principal should go to such children, but, on the death of either without children, the income of his share was to go to the survivors, the principal to be reserved to the children that might survive all three. *Held*, that the trust for the benefit of the three legatees and their children, if any, was separable from the limitation over on the contingency of the death of any one of them without children, and to that extent was valid, though the limitation over violated the statute against perpetuities.

Judicial settlement of the accounts of Austin D. Ewen, as sole surviving executor of George Ricard, deceased.

Wm. T. Graff, for the executor.
T. Henry Dewey, for Edward F. Randolph and others.
William J. Carr and Edward M. Bassett, special guardians.

ABBOTT, S.    George Ricard died on the 7th day of January, 1881.
He left a last will and testament, which was admitted to probate
on the 9th day of February, 1881.    By his last will and testament,
he made provision for various nephews and nieces, of which he left
a large number surviving him.    Among the provisions of his will
were the following:

"Fourth. I give and bequeath unto Mary Catharine Johnson, Edward F.
Randolph, and Elizabeth Boose, children of my sister Mary Agnes Van Name,
the annual income or profit of and upon the sum of three thousand dollars
each.    On the death of either leaving a child or children, then the sum of three
thousand dollars shall go to such child or children.    On the death of either,
leaving no child or children, then the income or profit shall go to the survivor
or survivors, and the principal shall be reserved to the child or children that
may survive all three.    If all three die, leaving no child or children, then the
principal shall be converted back into, and remain with, my estate.    *    *    *
Twelfth. I give and bequeath unto my four nieces and two nephews, to wit,
Maria Theresa Berrian, Mary Agnes Allen, Abby Louisa Ewen, Elizabeth Ma-
tilda Lamoreaux, George Ricard Connor, and John Ricard Connor, the net
income of all my estate, both real and personal, excepting, however, and sub-
ject to such as is herein otherwise given and bequeathed, to be divided equally
between them, share and share alike, for and during their natural lives.    My
executors hereinafter named shall take charge and control of my said estate,
collect and receive the rents, income, and profits thereof, pay all taxes, assess-
ments, and expenses, and divide the net proceeds, the one equal sixth part
thereof to and for each of my aforementioned nieces and nephews, to wit,
Maria Theresa Berrian, Mary Agnes Allen, Abby Louisa Ewen, Elizabeth Ma-
tilda Lamoreaux, George Ricard Connor, and John Ricard Connor, share and
share alike; the same to be paid annually, or as much oftener as my said ex-
ecutors may deem proper.    Thirteenth.    In case of the death of either of my
said four nieces, then I give, devise, and bequeath the one equal sixth part of
all my said estate, real and personal, to the children of such niece who may sur-
vive her, and to the heirs of such of her children as may have died before her.
Fourteenth. In case of the death of either of my said two nephews, leaving a
widow, the mother of his child or children, then the one equal sixth part of
such net income theretofore paid to him shall thereafter be paid to such widow
for and during her natural life; provided, however, that, in the event of her
remarrying, thence and from thenceforth such life estate and income shall
cease.    Fifteenth. On the death of either of my said two nephews leaving no
widow, the mother of his child or children (or leaving such widow, then on her
death or remarrying), then I give, devise, and bequeath the one equal sixth
part of all my said estate, real and personal, to the children of such nephew
who may survive him, and to the heirs of such of his children as may have
died before him.    Sixteenth. For the purpose of carrying out the provisions of
this will, and making an equal division as aforesaid, my executors are hereby
authorized and empowered to sell my said real estate, or any part thereof, and
also my personal estate, or any part thereof, whenever, in their opinion, the
same may be necessary and proper."

The above-quoted clauses are the only ones which require con-
struction in this proceeding.    The clauses of the will numbered 12,
13, 14, 15, and 16, constitute substantially a single clause, and are
to be construed together.    Taken by themselves, they present no
difficulty in their interpretation.    The effect of the dispositions con-
tained in these clauses is:    (1) To exclude all property previously
attempted to be disposed of.    (2) To divide the property into six
equal parts.    (3) To pay the income of one such equal share to each
of the nephews and nieces named for life.    As to the shares of the
nephews, to pay the income to their respective surviving widows,
if any,—mothers of their children.    (4) To pay the capital of the

respective shares to the children and descendants of the nephews and nieces, respectively, per stirpes. (5) If no children survive the nephew or niece, or widow of a nephew, then, as to the capital of such one-sixth share set apart for the benefit of such nephew or niece, no disposition has been made by the testator, and the same passes to the next of kin and heirs at law of the testator. The fourth clause of testator's will, above quoted, bears no particular relation to the other portions of the will, and may be interpreted as though the property disposed of by it constituted the entire estate of the testator. It is true that as to each sum of $3,000 upon a certain contingency contained in this clause, namely, the death of Mary, Edward, or Elizabeth, leaving no child or children, the disposition has the effect to suspend the absolute ownership of at least one of the funds beyond two lives in being. The rule of construction of such testamentary dispositions as that above quoted was apparently well settled in this state by the case of Knox v. Jones, 47 N. Y. 389, and cases cited at page 397. The testator in that case, Alfred G. Jones, bequeathed his residuary estate in trust to collect the whole income, and pay the same (1) to testator's brother, William B. Jones, during his life; (2) on the death of said brother, said income to be divided equally among testator's sisters, Catharine and Georgiana; (3) on the death of either Catharine or Georgiana, to the survivors of them, for life; (4) on the death of both, the entire principal was bequeathed to the children of Georgiana; (5) if no child of Georgiana survived Catharine and Georgiana, the entire principal was bequeathed to Columbia College. Held, that the bequest was void. Judge Allen says, at page 397:

"It is true that it is possible that, by the death of one or both of the sisters during the life of the brother, the absolute ownership may not actually be suspended beyond the time allowed by law, but this possibility will not sustain the will. If the suspension of absolute ownership will not, under all circumstances,—that is, necessarily,—terminate within the prescribed period, the disposition is void."

In this case it was clearly the intention of the testator that the title to the whole fund should vest in the trustee, and that under no circumstances should the absolute ownership of any part of the fund vest in any person until after the termination of the three lives, of William B., Catharine, and Georgiana. The general rule above stated has always been, and is now, recognized as the proper rule of interpretation, with a slight qualification under the later decisions. In Purdy v. Hayt, 92 N. Y. 446, the subject-matter involved was real property, and much of the authority of that case has no bearing whatever upon the subject now under consideration. It did, however, contain a construction of the statute against perpetuities upon facts as to real property not unlike those now involved as to personal property.

"Delevan died in 1864, leaving a will by which he gave his real estate, consisting of a farm at Fishkill, to his sisters Jane and Catherine, 'during their respective lives,' and, after their death, he directed it to be sold by his executors; the proceeds to be invested, and the income to be paid by them to his niece Elizabeth Brinkerhoff, daughter of his sister Betsey, 'during her life, and at her death the principal to be divided equally between any children she may

leave, or, if but one such child, the whole to be paid to that one.' But should said 'niece Elizabeth die, not leaving lawful issue,' then the principal was given to other parties named in the will. The two sisters of the testator, Jane and Catherine, survived him. His sister Jane died in 1865, and his sister Catherine in 1867. His niece Elizabeth Brinkerhoff also survived him" and his two sisters.

Judge Andrews says, at page 457:

"The rule is well settled that where, by the terms of the instrument creating an estate there may be an unlawful suspension of the power of alienation, the limitation is void, although it turns out by a subsequent event, as by the falling in of a life, no actual suspension beyond the prescribed period would take place. Hawley v. James, 16 Wend. 121. But this rule relates to cases where, if the limitations take effect in their order, as contemplated by the grantor or devisor, some of the estates limited will not vest within the prescribed period; and they are cut off as too remote, although it may happen that the estates so cut off would, by events subsequently happening, take effect within two lives."

In the Purdy Case, testator's sisters Jane and Catherine took a life estate in the property, as tenants in common, each being seised of the one equal one-half. Therefore, it was certain that, as to one-half interest in that property, there could not be a suspension beyond two lives,—that is, the life of the survivor of Jane and Catherine and the life of Elizabeth,—although it could not be determined at testator's death which sister's life (that of Jane or Catherine) it should be.

I have entered thus fully into the discussion of these two authorities because they contain the rule under which the provision of the fourth clause of the will of George Ricard must be interpreted. Under this clause, three separate funds, of $3,000 each, are established for the benefit of testator's nephew and two nieces, Edward, Mary, and Elizabeth, respectively. In case either dies, leaving a child or children, the capital of his or her fund goes to such child or children. I am clear that, whatever conclusion may be reached as to the provision over, upon the contingency of the death of either Edward, Mary, or Elizabeth without child or children, in the event of the decease of either, leaving a child or children, the trust is valid, and is separable from the further contingency which creates the doubt in which the construction of this clause is involved. Knox v. Jones, 47 N. Y. 389–398; Tiers v. Tiers, 98 N. Y. 568–573. In the latter case, Judge Rapallo says, at page 573:

"But, whatever construction be adopted in this respect, it is very evident that the ulterior contingent limitation is quite separable from the primary trust, and merely incidental,—its only purpose being to provide for a contingency which may never arise,—and the failure of that provision would not affect the general scheme of the testatrix."

So, in our case, it was the primary intention of the testator to provide in the fourth clause of the will for Mary Catharine Johnson, Edward F. Randolph, and Elizabeth Boose, during their lives, and upon their deaths, respectively, that the capital of the fund should go to their children. This part of the provision is easily and properly separable from the contingency provided for in the event of their decease without leaving a child or children, and so far, at least, stands under the above authority. See, also, Underwood v. Curtis, 127 N. Y. 523, 541, 28 N. E. 585. Now, as to the gift over

upon the contingency of the death of either Mary, Edward, or Elizabeth, leaving no child or children. This has actually occurred in the case of Mary. Upon testator's death, as in the Purdy Case, 92 N. Y. 446, it was certain as to two of the funds of $3,000 each that, under any circumstances, there could not be any suspension of absolute ownership between two lives in being, although it could not be determined at that time which two of the three funds it should be. This uncertainty has now been removed by the death of Mary. As to her share, the disposition over upon the contingency of her death leaving no child or children, which has happened, is void, because the absolute ownership of the fund was sought to be suspended by this testator for three lives in being at the time of his decease,— the lives of Mary, Edward, and Elizabeth. As to the shares of Edward and Elizabeth, speaking from the date of testator's death, the absolute ownership of either fund cannot be suspended for more than the two lives of Edward and Elizabeth. I have reached this conclusion solely upon the authority of the Purdy Case, 92 N. Y. 446. I have been unable to perceive any difference in principle upon the facts here involved, and those upon which the construction was made in that case, although I should have been equally unable to so distinguish earlier decisions upon the same subject as to justify the conclusions which I have reached.

Having reached the conclusion that the bequest in favor of Mary is void after her decease, it remains to be determined what shall become of the fund bequeathed for her benefit. I am of the opinion that it is undisposed of by the will, and must be distributed to the next of kin of the testator. It seems clear that the testator did not intend to include either of these sums in the dispositions of the 12th, 13th, 14th, 15th, and 16th clauses of his will, under any circumstances. The effect of so doing must necessarily be to still further suspend the absolute ownership of the fund, and to certainly render void another and portions of the third legacy contained in the fourth clause. Such an intention will not be presumed. Let decree enter accordingly.