CENTRAL TRUST COMPANY OF NEW YORK, as Substituted Trustee under the Last Will and Testament of JASON ROGERS, Deceased, Respondent, *v.* ALBERT FALCK and WILLIAM B. SYMMES, JR., as Executors, etc., of FLORA ELIZABETH ROGERS, Deceased, Appellants, Respondents, Impleaded with JASON ROGERS and Others, Appellants.

First Department, April 13, 1917.

Will construed — alleged illegal suspension of absolute ownership of personal property — possible construction suspending absolute ownership for three lives not preferred over other construction which makes trusts valid — ability to determine whether trust is valid within limit of single life — unlawful accumulation of income of personal property — acquiescence of beneficiary in illegal accumulation — decrees on prior accountings, etc., when res adjudicata.

Suit involving the construction of a will which, it is claimed, illegally suspends the absolute ownership of personal property contrary to the statute. The testator in substance provided that his widow was to be paid an annuity chargeable upon the income of the residuary estate which was placed in trust. Certain securities were given outright to a son T., and for each of the testator's two daughters he created a trust fund consisting of specified securities. As to each of these trusts he provided that part only of the income should be paid to the beneficiary until she became of age, or married, after either of which events she should be paid the whole income for life. At the death of either daughter her trust estate was to be divided equally between her children, but if she died without issue her share was to fall into the residuary estate "and the share of the survivor or survivors or the lawful issue of my said children be proportionately increased thereby."

The validity of the will is attacked upon the theory that if both of the two daughters should die without issue during the lifetime of their mother the share of the one first dying, which would fall into the residuary estate, would again be held in trust for the other sister until her death and on that event held in trust for the son T. during the lifetime of his mother, thus on a possible contingency suspending the absolute ownership of personal property for three lives.

*Held,* that the provision for the annuity to the widow chargeable upon the income did not suspend the power of alienation of the residuary estate during the lifetime of the widow and had no effect upon the estate created by the will, for the reason that if the children of the testator had all predeceased his widow the value of her annuity could have been ascertained and paid over and the remainder distributed free of any trust.

*Held, further,* that the alleged illegal suspension of absolute ownership of the personal property did not exist, in that the will did not in terms

provide that on the death of the second daughter before her mother the share that came to her from her sister dying without issue should again fall into the residuary estate to be held in trust for the son until the death of his mother, but on the contrary the will should be construed to mean that said sum should pass directly to the son T. instead of being held upon the further trust.

*Held, further,* that the validity of the will should be sustained upon the authority of *Purdy* v. *Hayt* (92 N. Y. 446), although the present case involves the validity of trusts rather than of successive life estates with contingent remainders and although the present will deals with trusts of personalty rather than with real estate. This because the question as to whether the trusts can possibly offend the statute can be determined when one of the sisters dies, that is to say, within the limit of a single life.

The case of *Purdy* v. *Hayt* (92 N. Y. 446) has not lost its force as a precedent because the Court of Appeals has never expressly reiterated the rule there laid down.

While the direction for the accumulation of part of the income of the daughters' trust estates during their minority and spinsterhood was invalid, it is immaterial where the beneficiaries on becoming of age and all other interested persons acquiesced in and confirmed the provision, for it amounted to a voluntary contribution to the corpus of the trust estates by the beneficiaries.

Moreover, where there have been many decrees of the Surrogate's Court and a judgment in the Supreme Court founded upon the validity of the accumulation of incomes, the matter is *res adjudicata* as to all surplus income accumulated before the decrees were made and said surplus should be distributed under the terms of the will.

DOWLING and LAUGHLIN, JJ., dissented, with opinion.

APPEAL by the defendants, Albert Falck and another, as executors, etc., and by Jason Rogers and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of May, 1916, upon the report of a referee, with notice of an intention to bring up for review an interlocutory judgment herein entered upon the decision of the court after a trial at the New York Special Term.

The defendants Albert Falck and another, as executors, do not appeal from that part of the final judgment which directs payment of certain moneys to them.

*Edward Winslow Paige,* for the appellant J. S. Rogers.

*Dean Emery* [*Robert W. Crawford* with him on the brief], for the appellants Jason Rogers and others.

*Douglas Campbell* [*Edward N. Goodwin* with him on the brief], for the appellant John T. Kreeger, as executor, etc.

*W. Rogers Westerfield,* for the appellants W. Rogers Westerfield and another.

*John J. Lordan,* for the appellant John R. Westerfield.

*Jacob F. Hohenstein,* for the appellant Annie W. Fields, as administratrix, etc.

*Albert Falck,* for the appellants, respondents, Albert Falck and William B. Symmes, Jr., as executors, etc.

*Lewis H. Freedman* [*Francis C. Nickerson* with him on the brief], for the plaintiff, respondent.

SCOTT, J.:

Jason Rogers died on August 25, 1868. He left a will, which was duly admitted to probate on September 11, 1868, whereby he undertook to dispose of his property for the benefit of his three children, providing an annuity for his wife. His wife died in 1891, and two-thirds of his estate have been distributed under the terms of his will. The present controversy has to do only with the share of one child, who died in 1913, the other children having predeceased her.

The estate has been the subject of much litigation, and a number of accountings have been had in the Surrogate's Court and in the Supreme Court. Now, nearly fifty years after the death of the testator and the probate of his will, it has been discovered for the first time that, as the respondents say, and as the court at Special Term has found, the whole scheme of the will was invalid and unlawful because it violates the statute against perpetuities.

The scheme of the will in brief was as follows: The widow was given an annuity which was charged upon the income of the estate. Certain property, consisting of stocks, bonds and mortgages, was given outright to a son, Thomas. For each of testator's daughters, Mary and Flora, the testator created a trust fund consisting of certain specified stocks and bonds. As to each of these trusts he provided that a part only of the income

should be paid to the beneficiary, until she became of age or married, after which the whole income was to be paid to her for life. At her death the trust estate was directed to be divided equally between her children, and if she died without issue, the said trust estate was to fall into and be a part of the residue of the estate.

The residue of the estate was given to his executors as trustees, who were to pay out of the income the annuity left to his widow. To the son, Thomas, was to be paid the whole of the income from his share of said residuary estate " so long as his mother, the said Mary Ann Rogers, shall live, and until my youngest daughter shall arrive at the age of twenty-one years or shall marry," when the equal one-third part of the residuary estate was to be paid to him.

As to the daughters it was provided that as each arrived at the age of twenty-one years, or married, she was to be paid during her life the whole income from the share of the estate held for her. When she died her share of the residuary estate was to be paid to her children, and " in case of the decease of either or any of my said children without leaving lawful issue, then the share of such deceased child or children shall fall into and be a part of the residue of my estate, and the share of the survivor or survivors or of the lawful issue of my said children be proportionately increased thereby."

The supposed invalidity in the scheme of the will lies in this, as it is said, that under a possible contingency, which has not, however, happened, there might have been a suspension of the absolute ownership of one of the two trust funds created for the benefit of the two daughters for more than two lives. Under no contingency could there be such a suspension as to both of the trust funds, and it could not be ascertained until one of the daughters died as to which fund such suspension would take place.

The court at Special Term correctly held, as I conceive, that the provision for the annuity to the testator's widow chargeable upon the income did not suspend the power of alienation of the residuary estate during the lifetime of the widow, and had no effect upon the estates created by the will, for the reason that if the children of the testator had all predeceased his

widow the value of her annuity could have been ascertained and paid over and the remainder distributed free from any trust. (*People's Trust Co.* v. *Flynn*, 188 N. Y. 385; *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 151 App. Div. 166, 171; *Buchanan* v. *Little*, 154 N. Y. 147.) Speaking for myself alone it seems to me that it is evident that the provision that the share of Thomas should be held by the trustees during the lifetime of his mother was merely intended to insure the payment of the annuity, and that if nothing else stood in the way of the payment of the share over to Thomas, he having arrived at the age of twenty-one years before his father died, there would have been no obstacle, under the authorities above cited, to the immediate payment over to him. There was, however, another limitation upon the payment over to Thomas of his share of the residuary estate, and that was that it should not be so paid until the testator's youngest daughter (Flora) should arrive at the age of twenty-one years or marry.

The significant feature of this case, which differentiates it from many others which are cited to establish its invalidity, is that upon this construction the only limitations upon the ultimate vesting of any part of the estate are the lives of the testator's daughters, of whom he left only two so that notwithstanding the cross-remainders, the absolute ownership of no part of the estate could by any combination of circumstances be postponed longer than for two lives. If he had left more than two daughters, with life estates to each and cross-remainders, a different question would have been presented. (*Simpson* v. *Trust Co. of America*, 129 App. Div. 200; affd., *sub nom.* *Simpson* v. *Simpson*, 197 N. Y. 586.)

But apart from the foregoing suggestion, which is that of the writer alone, we are agreed that, even if it be considered that Thomas' right to possession of his share of the residuary estate is limited by the life of his mother, as well as by the life, non-age or spinsterhood of his sister, the testator's youngest daughter, still the will was not necessarily invalid. The case supposed by the Special Term was that both sisters should die without issue, during the lifetime of their mother. Assuming that Flora were the first to die, the court said: " Then had

Mary Rogers in turn predeceased her mother and brother, the half of Flora's trust fund held in trust for Mary during her life would again in turn be held in trust for Thomas during the life of his mother. * * * The absolute ownership of the personal property would thus be suspended during three lives." This argument assumes that if both sisters died in succession before Thomas died, the sub-share of the one first dying, which at her death went into the residuary to swell the share of the second daughter, would upon her death again go into the residuary to be held under the trust for Thomas. Thus if Flora died first, her share would go into the residuary estate, one-half for the benefit of Mary to be held for her life, and one-half for the benefit of Thomas to be paid to him when his mother died. When Mary subsequently died the share originally left to her by the will would go into the residuary to be used for the benefit of Thomas until his mother died. As to this share the postponement of Thomas' right to absolute possession would be limited by only two lives, to wit, Mary's and the mother's. As to the one-sixth of the estate which came into the residuary for Mary's benefit when Flora died, the will does not in terms provide that it shall again fall into the residue. The language of the will both in the sixth and eighteenth clauses will be abundantly satisfied if the provisions that upon the death of a child the share held in trust for her shall fall into the residuary estate be limited to the shares first provided for by the will, and not extended to the sub-shares. This presents the same question which was involved in *Chastain* v. *Tilford* (138 App. Div. 746; affd., *sub nom. Chastain* v. *Dickinson,* 201 N. Y. 538). The language of the will in that case was substantially like the language in this to the effect that upon the death of a life beneficiary the principal held in trust for him or her should again become a part of the residuary estate. The question was whether this applied to a sub-share resulting from the death in succession of two life beneficiaries. We said: "The will makes no disposition of this sub-share upon the termination of the second life interest. The will by its terms provides only for a division and distribution of the original share given for the life of each of the children to whom life interests are given. It is not expressly provided, and we are not

called upon to so construe the will, that the sub-shares arising upon the termination of one life estate shall be added to and become a part of the principal share given by the will to the other life beneficiaries. (*Schey* v. *Schey*, 194 N. Y. 368; *Vanderpoel* v. *Loew*, 112 id. 167.) * * * So long as the general scheme can be carried out, the fact that it may be found in the end that as to a minor portion of her estate the testatrix has died intestate, does not materially interfere with her general plan." These words apply with precision to the case we now have before us. The general scheme of the testator was that if two of his children died without issue the beneficial enjoyment of his whole estate should pass to his surviving child, in trust if it was a daughter, in possession if a son. We certainly are not to convict him of having intentionally created an unlawful suspension of the absolute ownership of any portion of his estate. If we construe the will as it is written, without attempting to carry it further than the testator himself carried it, the result might have been (but was not) that on the death in succession of both of his daughters the sub-share consisting of one-sixth of the estate would pass directly to Thomas, instead of being held in trust for him during his mother's lifetime. There is nothing contrary to this view in *Simpson* v. *Trust Co. of America* (*supra*). The will considered in that case was quite different from the one we have to consider here, and could have been saved only by departing from what was deemed to be the clear intention of the testator.

Finally, if neither of the foregoing constructions be adopted, still we think that the validity of the will should be sustained upon the authority of *Purdy* v. *Hayt* (92 N. Y. 446), which is clearly sufficient for the purpose if it be accepted as an accurate statement of the law, and I am aware of no reason why it should not be. The Special Term refused to follow it because (1) the estates dealt with there were life estates, whereas the estates dealt with here are trust estates, and (2) because that case dealt with devises of real estate while this deals with trusts, partly, at least, composed of personalty. I concur with Mr. Justice DOWLING that neither of these reasons is sufficient. But neither do I think that the reason which leads him to distinguish *Purdy* v. *Hayt* is sufficient, which is that

the Court of Appeals has never since reiterated the rule it then laid down. The opinion was written by a very careful and experienced judge and was concurred in by all of his associates, and it has never been overruled or repudiated, perhaps because the precise question has not since been presented to that court, as it is now presented to us. I do not understand that considered opinions of the Court of Appeals lose their authority by age alone, and are not to be followed unless that court from time to time takes occasion to reiterate them. Indeed, the Court of Appeals has, in effect, applied the rule of *Purdy* v. *Hayt* (but without citing it) when it affirmed, *on the opinion below,* the decision of the Appellate Division of the Fourth Department in *Church* v. *Wilson* (152 App. Div. 844; affd., 209 N. Y. 553). If we place ourselves in imagination at the point from which, as the respondents contend, we must consider the question of the validity of the will, that is, at the date of Jason Rogers' death, we should find practically the same situation which was considered by the Court of Appeals in *Purdy* v. *Hayt.* Identical trust provisions were made for the daughters, Mary and Flora. Under a possible combination of circumstances to occur in the future, one of these trusts might, as the respondents claim, but not necessarily would, extend beyond two lives and thus be void. Whether either trust would offend against the statute, and if so which, could not be determined until one of the sisters died, but must be then determined, *i. e.,* within the limit of a single life. Indeed, the case of *Purdy* v. *Hayt* was stronger against the validity of the trust than the present, for in that case there was a certainty that one of two trust terms would extend beyond two lives, while here it was uncertain that either would so extend, and in fact neither has. Unless we are to overrule and ignore *Purdy* v. *Hayt* for no better reason than that it has never been reaffirmed, I think we should apply its rule to the present case.

We are also of opinion that while the accumulation of income on Flora's share during her minority and adding it to the principal of the trust fund was undoubtedly unlawful, yet since this disposition of the surplus income has been acquiesced in by all parties in interest, including Flora herself, who became of age upwards of thirty years ago, and has been confirmed and

approved by a great number of surrogate's decrees, and by one judgment of the Supreme Court, we should not now, at this late day, direct a different disposition of it. By thus acquiescing, Flora, in effect, voluntarily increased the corpus of the trust for her benefit. She knew, or must be held to have known, that the accumulation was unlawful and that she was entitled to receive it when she came of age, because it had been distinctly so declared by the Appellate Division in *Matter of Rogers* (22 App. Div. 428). I know of no reason why a person for whose benefit a trust has been created cannot enhance the corpus of the trust estate by voluntary contributions to it. It should be deemed a part of the trust estate and distributed accordingly.

But beyond all this I am of the opinion that the surrogate's decrees and the judgment of the Supreme Court are conclusive and *res adjudicata* as to all surplus income which had accumulated before they were made, and none has been retained since the Supreme Court judgment was issued. The rule in such cases is that decrees and judgments of that character are final and conclusive as to the amounts involved therein, and if the trustees had paid out moneys upon the faith of them there can be no doubt that they would have been protected. Mr. Justice DOWLING is of the opinion, however, that because the trustees did not pay out the accumulations, but still held them as a part of the trust estate, they can be required to separate them from the trust estate and pay them over as a part of the estate of Flora E. Rogers. I do not understand this to be in accordance with the rule. In *Matter of Hoyt* (160 N. Y. 607) the life tenant objected to the account of trustees because they had charged against income alone the premium upon certain securities which they had bought above par, taking a certain amount each year out of income and crediting it to principal. There had been several annual accountings upon which this fact had been disclosed and decrees entered thereon. The whole trust fund remained in the hands of the trustees, just as the trust fund does in this case, and it would have been a mere matter of bookkeeping to charge the sums which the Court of Appeals held had been illegally paid out of income, back to principal and credit them to income, which is what the Special Term has

directed to be done here. The Court of Appeals, however, did not so direct. It said: "The decrees in the former accountings are binding upon the daughter of the testator *as to the amounts therein involved*, and will not be affected by our decision herein, but this does not prevent her from raising the question now as to the distribution of the money in the hands of the trustees." This court in *Sullivan* v. *McCann* (124 App. Div. 132), referring to a former decision in *Kirk* v. *McCann* (117 id. 56), said: "We further held, however, that with respect to any surplus income received by the trustees *after the accounting* under the decrees of the surrogate, that these decrees were not adjudications." To the same effect are *Staples* v. *Mead* (152 App. Div. 751); *Hill* v. *Guaranty Trust Co.* (163 id. 380). As to the remark of the Court of Appeals in *Bowditch* v. *Ayrault* (138 N. Y. 222, 231), that the former decrees of the Surrogate's Court "form no bar, however, to the proper decision of the question now presented as to the distribution of the *property now in the hands of the trustee*," it is apparent from a reading of the case that what the court referred to was a sum of money which had been received since the last prior accounting, and as to the disposition of which the direction of the court was sought.

It follows that the judgment appealed from should be modified in accordance with the views herein expressed and as modified affirmed, with costs payable out of the estate to all parties who have appeared and filed briefs.

SMITH and DAVIS, JJ., concurred; DOWLING and LAUGHLIN, JJ., dissented.

DOWLING, J. (dissenting):

Jason Rogers, a resident of the county of Westchester, State of New York, died on August 25, 1868, possessed of certain real and personal property. He left him surviving his widow, Mary Ann Rogers, who died August 9, 1891, and three children, Thomas, Mary Jacintha and Flora Elizabeth. Thomas Rogers became of age November 11, 1865, and died February 22, 1908, leaving eight children, viz., Jason Rogers, William C. Rogers, J. S. Rogers, Robert W. Rogers, Ida (Rogers) Janes, Emily (Rogers) Moller, Mary (Rogers) Ehlers and Thomas Rogers, Jr. — all of full age. Mary J. Rogers Wester-

field died February 16, 1907, leaving three children, viz., William R. Westerfield and Jason R. Westerfield, both of full age, and John R. Westerfield, an infant. Flora E. Rogers became of age May 15, 1884, and died August 8, 1913, leaving no children. Thomas Rogers and Flora E. Rogers left last wills and testaments, which were duly admitted to probate, on April 24, 1908, and September 29, 1913, respectively, by the Surrogate's Court, New York county.

Jason Rogers left a last will and testament dated November 23, 1863, which was duly admitted to probate by the Surrogate's Court of Westchester county September 11, 1868, and letters testamentary thereunder were duly issued to Columbus B. Rogers and Thomas Rogers, the executors therein named, who qualified and entered upon the discharge of their duties and continued thereupon until February 24, 1873, at which time their accounts were judicially settled, they were discharged as executors and they continued to act as trustees of the trusts created by the will until June 7, 1886, when Columbus B. Rogers resigned and William Cauldwell was appointed to succeed him. On March 16, 1897, a decree was entered in the Surrogate's Court, Westchester county, settling the accounts of the trustees. Thereafter the said trustees appointed William Shillaber, Jr., as a cotrustee. On April 20, 1898, the Surrogate's Court of Westchester county removed Cauldwell and Rogers as trustees and on August 31, 1906, pursuant to power conferred by the will, Shillaber, sole surviving trustee, designated and appointed plaintiff as substituted trustee of all the trusts created under the will. Shillaber's accounts were judicially settled and he was permitted to resign as trustee November 26, 1906, since which time plaintiff has been acting as sole trustee of the estate.

By his will Jason Rogers first directed that there should be paid to his mother $500 annually for the term of her natural life. He then bequeathed certain personal property, consisting of stocks, bonds and mortgages to his son Thomas Rogers. He then created by the 3d and 4th paragraphs of his will two trusts, each consisting of fifty shares of the capital stock of the Rogers Locomotive and Machine Works of Paterson, N. J., one hundred and ninety shares of the capital stock of

the Paterson and Hudson River Railroad Company, fifty shares of the capital stock of the Paterson and Ramapo Railroad Company and four $1,000 bonds of the last named company, one of the said trusts being for his daughter Mary Jacintha, the other for his daughter Flora Elizabeth. The direction, given to his trustees as to both these trust estates were as follows:

"*Sixthly.* I order and direct said trustees during the minority of my said daughter to pay to her guardian hereinafter named so much of the income of said trust estate as said guardian may in her discretion think proper and necessary to expend for the support and education of my said daughter, not exceeding eight hundred dollars yearly while my said daughter is under the age of twelve years, and not exceeding fifteen hundred dollars yearly after she arrives at the age of twelve years.

" And I do further direct said trustees, during the minority of my said daughter, to invest the surplus of said income on bond and mortgage upon productive real estate worth at least double the value of the amount secured thereon which accumulations shall be added to said trust estate, and be held by said trustees for the same trusts. And when my said daughter shall arrive at the age of twenty-one years, or shall marry, I do order that the whole of the income and interest of said trust estate be paid to her yearly, or oftener as the same may become due, during her natural life, upon her own receipt only, and to her sole and separate use free from the control of any husband.

" And upon the death of my said daughter, I order and direct the said trust estate to be equally divided among her children, the issue of any child then deceased to receive their parent's share, the principal of each share to be paid to such child or issue as he or she shall arrive at the age of twenty-one years and until then the income of the share of each one to be paid to him or her respectively.

" And in case my said daughter shall die without lawful issue living at her death then the said trust estate shall fall into and be a part of the residue of my estate."

After making certain provisions for his wife in lieu of dower,

including an annuity of $4,000 as long as she should live and remain his widow, the will, which by the tenth clause thereof had left all his realty and the residue of his personalty to the executors and trustees therein named " in trust and upon the trust hereinafter particularly mentioned," proceeded:

" *Fourteenth.* The residue of the income of my estate so held in trust by said trustees I give to my said three children, Thomas Rogers, Mary Jacintha Rogers, and Flora Elizabeth Rogers, share and share alike, and until my said children shall be entitled to receive the same respectively as hereinafter provided, I direct the said trustees to invest said residue and the accumulations thereof as aforesaid, and the same shall be added to said trust estate and held by said trustees for the same trusts.

" *Fifteenth.* And upon the arrival of my said son Thomas Rogers at the age of twenty-one years, I order and direct said trustees to pay to him annually the whole of his share of the income of my estate so held in trust by them so long as his mother, the said Mary Ann Rogers, shall live, and until my youngest daughter shall arrive at the age of twenty-one years or shall marry. And then I direct the said trustees to pay and transfer to him one equal third part or share of all my estate so held in trust by them.

" *Sixteenth.* And in case of the decease of my said son before receiving his share of all my estate as above provided leaving lawful issue, I then order and direct the said trustees to distribute his said share among said issue, each then living child of his taking one equal share thereof. And the lawful issue of any deceased child taking by representation the share their parent would have taken, if then living, the principal of each share to be paid to such as he or she shall arrive at the age of twenty-one years and until then the income to be paid to him or her respectively.

" *Seventeenth.* I order and direct the said trustees as each of my said daughters arrive at the age of twenty-one years or shall marry, to pay her semi-annually during her natural life upon her own receipts, and for her sole and separate use free from the control of any husband, the whole of her share of the

income of my estate so held in trust by them. And upon the decease of either of my said daughters leaving lawful issue, I order and direct the said trustees to distribute one equal third part or share of all my estate so held in trust by them among such issue, each then living child of hers taking one equal share thereof and the lawful issue of any deceased child taking by representation the share their parent would have taken, if then living, the principal of each share to be paid to such issue as he or she shall arrive at the age of twenty-one years, and until then the income to be paid to him or her respectively.

" *Eighteenth.* In case of the decease of either or any of my said children without leaving lawful issue, then the share of such deceased child or children shall fall into and be a part of the residue of my estate, and the share of the survivor or survivors or of the lawful issue of my said children be proportionately increased thereby."

Under the 15th paragraph of the will Thomas Rogers was to receive his one-third of the principal of the residuary trust after his mother died and his sister Flora became of age. The latter of these events happened in 1891, and he or his estate has been paid this share in full. By his will Thomas Rogers disinherited all his children except his youngest son, Thomas Rogers, Jr. After the death of Mary J. Rogers Westerfield the trustees paid over to her children, pursuant to the provisions of the 17th paragraph of the will, one-third of the principal of the residuary trust, of which she had been the beneficiary in her lifetime, and also the corpus of the separate trust created for her by the 3d paragraph of the will. By the will of Flora E. Rogers she left her residuary estate to her nephews, the Westerfield children.

The first question involved in this appeal is the construction of the will of Jason Rogers, and the consequent disposition to be made of the one-third share in the residuary trust, of which Flora E. Rogers was the beneficiary in her lifetime, as well as of the individual trust for her benefit, the aggregate of these two trust funds being about $350,000. Upon the trial all of this fund was claimed, and is still claimed, by both the Westerfield children and the estate of Flora E. Rogers, and one-half thereof was claimed by the estate of Thomas Rogers and by the

children of Thomas Rogers.   The differences between the estate and the children of Thomas Rogers have since been adjusted, and as between them it is immaterial to which interest the share is to go.   The learned trial court held that as the remainders attempted to be created in both the individual and residuary  trusts for the benefit of Flora E. Rogers were unlawful and void, as violative of the statutes of this State against the suspension of the power of alienation, intestacy as to her share existed, and the trust estates reverted to the estate of Jason Rogers and passed as intestate property to his heirs at law and next of kin according to the statutes of descent and distribution.   As the result of this the funds in question would pass, one-third to the Westerfield children, one-third to the estate of Flora E. Rogers (whereof the Westerfield children are the principal beneficiaries) and one-third to the estate of Thomas Rogers.

The portion of the decision material to this question is as follows:

" *Ninth.* That the provisions of the eighteenth clause of the will of Jason Rogers in respect to the disposition of the remainders attempted to be created by the testator to take effect upon the death of either of his daughters without issue are in violation of the statutes of the State of New York in respect to the suspension of absolute ownership, and of the right of alienation of property, and are unlawful and void.

" *Tenth.* That the testator died intestate as to the remainders attempted to be created by him in the trusts for his daughter Flora E. Rogers upon the death of that daughter without issue.

" *Tenth A.* That the remainders attempted to be created in the corpus of the trusts for the testator's daughter Flora to take effect upon her death without issue being unlawful and void as above found, reverted upon her death without issue to the estate of the testator, and as a matter of law the right to said reversions vested upon the death of the testator in his heirs-at-law and next-of-kin, as of the date of Jason Rogers' death, subject to being divested by the birth of issue to Flora E. Rogers and the survivorship of Flora by any of such issue.

" *Eleventh.* That said reversionary rights resulting from

intestacy as to said remainders were never divested by the birth of issue to Flora, and that upon the death of the said Flora E. Rogers those rights passed to the heirs, executor, administrators or assigns, as the case may be, of the aforesaid heirs-at-law and next-of-kin of Jason Rogers as of the date of Jason Rogers' death, subject however, to the provisions of the foregoing and following conclusions of law."

The provisions of the judgment follow the language of the decision.

As was said in *Matter of Wilcox* (194 N. Y. 294); " At this point we must recall two elementary principles in determining the validity of wills. *First.* Such validity must be determined not in the light of what has actually transpired, but from exactly the same point of view from which it would be regarded had a suit been brought to determine the validity of the will at the time of the death of the testator, instead of at a subsequent period. That is to say, the validity of a will depends not on what has happened since the death of the testator, but on what might have happened. *Second.* ' In determining the validity of limitation of estates, under the above statutes (the provisions of the Revised Statutes in reference to absolute ownership and restraint of alienation) it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void.' [*Schettler* v. *Smith*, 41 N. Y. 334.]"

Although in the actual course of events in relation to the Rogers estate, it so happened that the provisions of the Revised Statutes (1 R. S. 773, § 1; 1 R. S. 723, §§ 14, 15) in reference to absolute ownership and restraint of alienation were not in fact violated yet the test to be applied to the validity of the clauses of the will under consideration is, whether any eventuality might have occurred after testator's death which would have rendered them invalid. Such an eventuality the trial court has found was the following:

" The separate trust for Flora E. Rogers provides for the payment of the income of certain personal property to her during her life. Had she died without issue before the death of either her mother or her sister, the said property would, under the sixth clause of the will, have gone into the residuary estate to remain in trust, and the income from it would have been payable one-half to Mary J. Rogers during her life and one-half to Thomas Rogers during the life of their mother, according to the fifteenth clause. Then had Mary Rogers in turn predeceased her mother and brother, the half of Flora's trust fund held in trust for Mary during her life would again in turn be held in trust for Thomas during the life of his mother. Thus as to one-half of the fund it would be held first in trust to pay the income to Flora during her life, then to pay the income to Mary during her life, and again to pay the income to Thomas during the life of his mother. The absolute ownership of the personal property would thus be suspended during three lives.   *   *   *

" The same result would follow also in the case of the daughters' shares of the residuary estate. In each case the income of her share is payable to her during her life, and upon her death without issue is payable one-half to her sister and one-half to Thomas during his mother's life, and upon his other sister's death without issue one-half thereof would similarly be suspended during three lives."

The same result would have followed if Mary J. Rogers had first died, and then her sister, Flora E., had in turn predeceased her mother and brother.

The trial court held, however, that while the limitations of Jason Rogers' will conditioned upon the death of his daughters without issue were void and resulted in an intestacy as to the entire share of each daughter upon her death without issue, the other independent alternative limitation created by the will (*i. e.*, the division of her share among her issue, if she left any), was valid, that the corpus of the property vested absolutely upon the death of the testator's child in the issue of such child then living and that payment thereof only was postponed until each attained the age of twenty-one years. This alternative limitation was, therefore, held valid, as it could be upheld

without interfering with the general plan of the testator in caring for his children, and intestacy as to each share resulted only in case of the death of a daughter without issue.

The case principally relied upon to support the validity of the provisions in question, at least in part, is *Purdy* v. *Hayt* (92 N. Y. 446). In that case the court said (p. 455): "Having thus ascertained the nature of the estates for life and in remainder given by the will, it only remains to apply the test of the statute to determine their validity. The law permits, as we have seen, the creation of only two successive estates in the same property. The two sisters of the testator took, as we have held, an estate in the farm as tenants in common with cross remainders for life. The life estate of his sister Jane, who first died, terminated on her death, and her enjoyment constituted one life estate in her share. A second life estate in that share then vested in her sister Catharine and was spent at her death. The limit of the statute as to that share was then reached, and no subsequent life estate therein could be limited either in the land or the proceeds. The third life estate in the proceeds of that share attempted to be created in the testator's niece, Elizabeth, was therefore void, and the *corpus* of the share vested in the children of Elizabeth then living by force of the gift in remainder, and the seventeenth section of the statute,* or descended on the death of the testator's sister Jane to the testator's heirs at law, as in case of intestacy." The court then proceeded to say (p. 457): "The question as to whether the remainder can be sustained as to the share of the sister of the testator, *last dying*, in view of the Statute of Perpetuities, is in one aspect a novel one. It is apparent that the power of alienation was suspended by the contingent limitation in remainder, and such suspense could not lawfully exceed two lives, and in a single case, a minority in addition. There was, under the will, a limitation for three lives as to the share of one of the two sisters of the testator, but upon which share that limitation would operate, could not be known until one of the sisters should die, and that event would render it certain that the unlawful limitation in remainder was of the share of the sister

---

* See 1 R. S. 723, § 17.— [REP,

so first dying.   The question therefore arises, whether it wholly defeats the remainder, that it could not be ascertained, until one life estate was spent, which of the shares would be unlawfully suspended.   We perceive no good reason why such a result would follow.   The rule is well settled that where by the terms of the instrument creating an estate, there may be an unlawful suspension of the power of alienation, the limitation is void, although it turns out by a subsequent event, as by the falling in of a life, no actual suspension beyond the prescribed period, would take place.   (*Hawley* v. *James*, 16 Wend. 121.)   But this rule relates to cases where, if the limitations take effect in their order, as contemplated by the grantor or devisor, some of the estates limited will not vest within the prescribed period, and they are cut off as too remote, although it may happen that the estates so cut off would, by events subsequently happening, take effect within two lives.

" The case here is not, we think, within this principle.   In the one case the vice affects the whole limitation, and in the other the limitation of a part only of the property devised, the only uncertainty being as to the part the title of which will be unlawfully suspended, and this will be ascertained within the period of a single life.   Where the precedent or particular estate is given to several persons as tenants in common, the remainders limited upon the estates of a part of the tenants in common, may fail, without affecting the remainders limited upon the estates of the others.   (Fearne on Rem. 193; *Hawley* v. *James, supra.*)   We think, therefore, the unlawful suspension under the will in question, affected only the share of the estate given for life to the testator's sister Jane."

The learned trial court in the case at bar declined to follow *Purdy* v. *Hayt* for two reasons: *First*, because in that case the estates created were legal life estates, whereas those under the Rogers will were trust estates, which difference we do not believe affects the application of the principle; *second*, because the *Purdy* case dealt with real property while the Rogers will dealt only with personalty; in fact, the Rogers residuary trusts comprise both realty and personalty; but even if they did not, there is no difference in the principles applicable to trusts of real and personal property under the statute, so far as suspension of the

power of alienation and of absolute ownership are concerned. (Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 42; Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 11; *Matter of Wilcox*, 194 N. Y. 300.) But we do not find that the Court of Appeals has ever adopted, approved, cited or followed the rule heretofore enunciated in *Purdy* v. *Hayt* in any decision. On the contrary, the cases seem to lay down a different rule of interpretation. Thus, in *Simpson* v. *Trust Co. of America* (129 App. Div. 200; affd. without opinion, *sub nom. Simpson* v. *Simpson*, 197 N. Y. 586), where a testator placed one-third of his estate in trust for the benefit of his wife' for life and directed that upon her death the part so set apart for her benefit should be added in equal proportions " to the parts or shares of my brothers and my sister me surviving, " and the remaining two-thirds of the estate he directed to be divided into as many parts as he might leave brothers and sister him surviving, or their issue if deceased, and one share was left to each brother or sister, or if dead to their issue *per stirpes*. The income from one of said parts was left to each brother or sister for life, and in case of their death the executor was directed " to add the part or share of such deceased brothers or my sister to the shares or share of the survivors or survivor of them in equal portions," and on the death of the last survivor to pay the whole of the principal to testator's nephew and niece. This court said (at p. 204): " It is urgently argued on behalf of the appellants that it is unnecessary and .improper to apply the cross remainders provided by the will as between the surviving brother and sister, to the share originally set apart for the wife, and directed at her death to be added to the shares set apart for the brother and sister, and it is insisted that the language of the will will be satisfied if the provision for cross remainders be limited to the shares originally set aside for the surviving brothers and sister. A number of well-known cases are cited in support of this contention. (*Beatty* v. *Godwin*, 127 App. Div. 98; *Corse* v. *Chapman*, 153 N. Y. 466; *Everitt* v. *Everitt*, 29 id. 39; *Vanderpoel* v. *Loew*, 112 id. 167.) All of these cases, however, are to be distinguished from the present because there was in each a provision whereby

the accrued share would vest absolutely in some one upon the death of the first or second life tenant. In the present case no such provision is to be found. If the one-sixth to be added to the respective shares of the surviving brother and sister are not to be subjected to the provision for cross remainders applicable to the shares originally set apart for them, there will result intestacy on the death of whoever first dies, of the brother and sister, as to the one-sixth added to his or her share on the death of the widow, for the will contains no provision for the vesting of that one-sixth share in any one upon the death of the brother or sister who first dies. There is always a presumption that the testator did not contemplate intestacy, and a construction that will result in even partial intestacy is not to be adopted, if a different construction is permissible. (*Matter of Miner*, 146 N. Y. 121, 131; *Johnson* v. *Brasington*, 156 id. 181, 187; *Matter of Hammond*, 74 App. Div. 547, 551; *Ward* v. *Stanard*, 82 id. 386, 389.) To avoid such a result, and for the purpose of carrying out the obvious will of the testator, the courts do not hesitate to imply cross remainders, even of accretions to funds set apart for life tenants, and notwithstanding that such implication will result in destroying the trusts attempted to be created. (*Purdy* v. *Hayt*, 92 N. Y. 446; *Dana* v. *Murray*, 122 id. 604.) We entertain no doubt that it was the intention of the testator that his whole estate, including the share set apart for his wife, should be retained by the executor until the death of the last survivor of his surviving brother and sister, and then and only then be paid over to the nephew and niece. As to one-sixth of the estate, this created an illegal suspension of the absolute ownership." So holding, the court found the whole will invalid, and did not attempt to save any part of it. In *Church* v. *Wilson* (152 App. Div. 844; affd. on opinion below, 209 N. Y. 553, in so far as it deals with the construction and validity of the will) testator devised the income from his residuary estate to his widow for life, and upon her death one-third of the income thereof to each of his three children, with the remainders in fee to the issue of each of such children; but in the event of the death of either child without issue, a further life estate was given in the share of the one so dying to the surviving children. It was held that

First Department, April, 1917. [Vol. 177.

the remainders over upon the death of the testator's children without issue were void as a suspension of the absolute ownership and power of alienation for more than three lives in being at the time of the death of the testator. It seems plain that in the case at bar the trial court properly interpreted the intention of the testator, and that such intention necessarily brought about the invalidity of the provision under consideration, and led to the intestacy as to the remainders sought to be created in the corpus of the trusts for the testator's daughter Flora E., to take effect upon her death without issue. The judgments appealed from in this respect are, therefore, affirmed.

The only other question which requires consideration is the disposition to be made of the surplus income accumulated from the trust estates of Flora E. Rogers beyond her minority. The learned trial court in its opinion said: "There is another portion of the trust estates created for Mary and Flora Rogers, however, which requires interpretation in order to properly dispose of the fund before us in this action, namely, that portion which provides for the accumulation of the income from the share of each child of the testator not necessary for the support of the said child. The will directs that the surplus income be reinvested with the corpus of the estate and held subject to the same trusts during the life of the beneficiaries, with remainder over to their issue. It is well settled that a trust to accumulate income can only be for the benefit of a minor during minority, and that the income so accumulated must vest absolutely in the minor upon becoming of age. Any accumulation beyond the minority of the beneficiary is void, and any provision which could possibly vest the sum accumulated in any person other than the infant for whom the trust is created is void. (*Pray* v. *Hegeman*, 92 N. Y. 508.) The provisions in the will for accumulation and reinvestment are accordingly invalid, and upon the coming of age of each of the testator's children the amount of the income of his or her share not expended for his or her benefit and all accretions and income therefrom became absolutely the property of the said child in fee."

The interlocutory judgment contains the following provisions upon this point: " Ordered, adjudged and decreed that the pro-

visions of the will for the accumulation of income from the share of a child not necessary for the support of such child and the reinvestment of such surplus income with the corpus of the estate to be held during the life of such child is void, and any such income accumulated and held beyond the minority of Flora E. Rogers should be paid to the executors of her estate; and it is further

" Ordered, adjudged and decreed that the income of the property held in trust for the benefit of Flora E. Rogers during her life and so much of the income accumulated and reinvested during her minority as is contained in the corpus of the property held in trust for the benefit of Flora E. Rogers during her life passes to her executors; and it is further

" Ordered, adjudged and decreed that the provisions of the will of Jason Rogers providing for the investment and reinvestment of the accumulation of surplus income with the corpus of the Estate are void; and it is further

" Ordered, adjudged and decreed that so much of the separate trust estate in the hands of the trustees as represents surplus income which accrued during the minority of Flora E. Rogers, and which was added upon her attaining her majority is distributable and should be distributed to the executors of Flora E. Rogers."

We agree with the conclusion reached by the learned trial court as to the invalidity of this direction for accumulation, nor in fact do the appellants contest its invalidity, but they claim that this provision has heretofore received a practical judicial construction, acquiesced in by all the parties interested, and never questioned by Flora E. Rogers, from the time she reached her majority May 15, 1884, until the time of her death, August 9, 1913 — a period of nearly thirty years. When her father died, Flora E. Rogers was five years of age. Between that time and the attainment of her majority, the trustees of the father's estate paid to her guardian the portion of the income of her trust estate directed so to be paid by the will, and added any surplus of income to the principal of the trust fund as directed by the 6th clause of the will. The first of these decrees was duly made by the Surrogate's Court, county of Westchester, on May 26, 1873, settling and approving the accounts of Colum-

bus B. Rogers and Thomas Rogers as executors of the will of Jason Rogers, deceased, discharging them as such, directing them to turn over certain moneys and securities to themselves as trustees under said will, and providing, among other things, that the said trustees should take into their possession the property left in trust for Flora E. Rogers by the 4th section of the will, and "It is further Ordered, Adjudged and Decreed, That said Thomas Rogers and Columbus B. Rogers, as such Trustees, pay over to the Testamentary Guardian of the before mentioned daughter, Flora E. Rogers, so much of the income of said Trust Estate as in the discretion of said Guardian she shall think proper and necessary to expend for her education and support, not exceeding Eight hundred dollars yearly until she shall arrive at the age of twelve years, and that after said Flora E. arrives at the age of twelve years then said Trustees shall pay to said Guardian a sum not exceeding fifteen hundred dollars annually for each of said minors for the support and education of each of said daughters during their several Minorities.

"The said Trustees are further ordered and directed to invest the surplus of said income on Bond and Mortgage upon productive Real Estate, worth double the value of the amount secured thereon, *which accumulations shall be added to said Trust Estate, and held by said Trustees for the same Trust, and when said daughters shall arrive at the age of twenty-one years or shall marry, then the whole of said income and interest of each of said Trust Estate shall be paid by said Trustees to the several parties entitled thereto as is by the Sixth Section of said Will fully set forth and provided, Except in case of the death of either of said daughters without issue, then and in that event the share of the one so dying without issue shall fall into and become a part of the residuary Estate of testator.*"

Upon this proceeding, as well as upon all the succeeding ones brought during her minority, Flora E. Rogers was represented by a special guardian duly appointed by the surrogate. Subsequent decrees were made by the surrogate of Westchester county on January 7, 1876, April 30, 1877, December 10, 1880, and January 28, 1884, each settling the account of the

trustees and containing specific directions that the surplus income be added to the principal of Flora E. Rogers' separate trust estate as provided by the will. The last of these decrees set forth at length, among other things, statement C, showing the original amount of the special bequest to Flora E. Rogers (being the so-called separate or individual trust) as $21,664.56, the amount of income added to the principal thereof over and above the annual amount paid to her testamentary guardian, $27,677.46; the amount of income received since the last accounting $7,937.23; the amount paid to the guardian since said date $4,773.89; the amount to be added to the principal sum of the trust estate (being the surplus of income over payment) $3,163.34; and the then amount of the special trust fund, including the addition thereto of all surplus interest, $52,505.36. On April 15, 1885 (Flora E. Rogers having then passed her majority), the same court made a decree settling the accounts of the trustees of the Rogers estate, including a summary statement of the condition of the trust estate for the individual benefit of Flora E. Rogers, which showed receipts since the last accounting of $6,578.47, payments of $2,250 to the guardian of Flora E. Rogers and to her since her majority of $1,100, other payments of $381.71, and a total balance in the fund, including surplus income of $55,352.13 from which was deducted the amount of income received by Flora E. Rogers after she became of age ($606.51), leaving the amount of the special estate and its increase $54,745.62, "the whole of the net income of which now goes to the said Flora E. Rogers." So that Flora E. Rogers was then formally and fully advised that all the accumulated surplus income during her minority had been added to the principal of her separate trust fund, and she was to receive the income therefrom but no part of the principal, either original or the increment from the unexpended balances of annual income. The decree provided further: " It also appearing from the last aforesaid summary statement that the said trustees now hold as the separate special estate of Flora E. Rogers to be by them kept and invested, reinvested, received and paid over under the directions of the testator as expressed in his said last will and testament as principal the sum of $54,745.62 (fifty-four thousand seven hundred and forty-five 62/100 dollars) and

as balance of income due her $606.51.    It is now hereby further ordered, adjudged and decreed that the said trustees keep, invest, reinvest, receive and pay over the said separate special estate as they are in said will directed to do, that they pay over to the said Flora E. Rogers who has attained the age of twenty-one years all the net income derived therefrom and that they do now pay to her the said balance of $606.51 remaining in their hands."

Thereafter further decrees were made by the Surrogate's Court of Westchester county settling the accounts of the trustees, under date of June 7, 1886, July 20, 1887, July 25, 1888, September 5, 1890, and November 15, 1893, all setting forth the condition of the Flora E. Rogers separate trust, accounting to her for the income (all of which she now received) and showing the holding by them of the corpus of the fund.    The decree of November 15, 1893, was opened and set aside by the surrogate to allow Mrs. Westerfield and Flora E. Rogers to file objections to the accounts of the trustees, which had no relation to the point under discussion, but had to do with the distribution of stock in the Rogers Locomotive Company in exchange for the stock in the former Rogers Company and whether such new stock was to be regarded as principal or income of the various trust funds in the Rogers estate, of which such stock formed a part, a new decree was made by the surrogate March 16, 1897. This provided in part: " That out of the balance of the corpus of said trust estate held by said accountants in trust for the benefit of Flora E. Rogers, amounting, as above stated, to the sum of one hundred and three thousand four hundred and eight 33/100 dollars, there is to be paid one-quarter of the costs and expenses of this accounting as hereinafter fixed and allowed, to wit, the sum of seven hundred and seventy-four 35/100 dollars, and the balance of the corpus of said trust fund, to wit, the sum of one hundred and two thousand six hundred and thirty-four 03/100 dollars, is to be, by the said trustees, invested, kept invested, paid over, applied and appropriated as in and by said last will and testament they ordered and directed as herein adjudged and decreed.

" That out of the balance of income of said trust estate for the benefit of Flora E. Rogers, amounting as above stated to

the sum of forty-two thousand four hundred and twenty-eight 24/100 dollars, the said trustees are to retain and pay to themselves as and for their commissions herein and hereby now allowed and adjudged to them the sum of four hundred ninety-seven 14/100 dollars each, amounting in the aggregate to the sum of nine hundred and ninety-four 28/100 dollars, and that they are to forthwith pay over to said Flora E. Rogers the balance of said income, to wit, the sum of forty-one thousand four hundred and thirty-three 96/100 dollars, taking her receipt therefor."

From this decree all parties appealed to the Appellate Division, where it was affirmed (22 App. Div. 428), and all but Mrs. Westerfield and Miss Flora E. Rogers appealed to the Court of Appeals, where it was finally affirmed. (*Matter of Rogers,* 161 N. Y. 108.) In his opinion in the Appellate Division Mr. Justice CULLEN called attention to the fact that " The very provision of the testator's will upon which the referee and the counsel for the remaindermen lay so much stress as evincing the testator's intent, to wit, that the accumulations during the minority of the life tenant should not go to that life tenant but become part of the principal of the trust estate, was void (*Pray* v. *Hegeman,* 92 N. Y. 508) and the life tenant was entitled to the accumulations, whether in fact she has received them or not." Despite this decision (which was handed down at the November term, 1897) Flora E. Rogers took no steps of any kind to assert her right to the accumulated surplus income of her trust fund and thereafter three additional decrees were made settling the accounts of the trustees and showing the condition of the Flora E. Rogers separate trust fund, viz., on February 21, 1898, April 25, 1906, and November 26, 1906. Thus we have five decrees of the Surrogate's Court treating the surplus income of the Flora E. Rogers trust fund as a part of the principal of such fund and directing that it be added thereto under the provisions of the will, all entered before Flora E. Rogers became of age, and eight similar decrees entered after she attained majority, the last-named covering a period of twenty-one years, the first-named of eleven years. During all this time neither she nor any one representing her ever questioned the propriety

or legality of such transfer of the surplus income to the principal account. Finally, after the death of Mrs. Mary J. Westerfield, the Central Trust Company of New York, as substituted trustee of the trusts created by the last will and testament of Jason Rogers, deceased, commenced an action in the Supreme Court, New York county, against Flora E. Rogers and all other persons interested in the estate of Jason Rogers for the settlement of its accounts, in which Flora E. Rogers appeared and answered, and in which action a judgment was duly entered February 3, 1913 (some six months before Flora E. Rogers died), which judgment was approved as to form by her attorney, whereby, among other things, it was provided: " It is further Ordered, Adjudged and Decreed that said substituted trustee shall continue to hold as substituted trustee of the trust created under the Fourth Paragraph of the Last Will and Testament of Jason Rogers, deceased, for the benefit of Flora E. Rogers, under said Fourth paragraph of the Last Will and Testament of the said decedent, the balance of principal held on the 18th day of March, 1912, amounting to $53.19 in cash and securities of a value of $46,340.00 in all $46,393.19 as shown by Schedule H of its accounts upon the trusts set forth in said Last Will and Testament.

" It is further Ordered, Adjudged and Decreed that the said substituted trustee shall pay and distribute the income of the said trust created for the benefit of Flora E. Rogers under the Fourth Paragraph of the Last Will and Testament of the said decedent, remaining in its hands on the 18th day of March, 1912, as shown by Table H of its accounts, amounting to $2,779.72, as follows:

" (a) To itself as unpaid commissions as substituted trustee the sum of $5.29.

" (b) To Flora E. Rogers pursuant to the terms and conditions of said Fourth paragraph of the said Last Will and Testament of the decedent the sum of $2774.43. "

The two facts which are salient throughout the history of these proceedings are: *First.* That Flora E. Rogers in her lifetime never questioned the validity of the direction in the will for the accumulation of income during her minority; and,

*second,* that the issue of the validity of such direction was never squarely presented to any court, for every one treated the direction as lawful and valid and proceeded accordingly. It is argued with much force, following *Pray* v. *Hegeman* (98 N. Y. 351), that these prior decrees and judgment are *res adjudicata,* and that the direction for accumulation must still be held valid, although concededly it is invalid. I do not think that either the doctrine of *res adjudicata* or of estoppel constitutes a bar to the proper determination of the legal rights of the parties as now squarely presented in this action for the construction of the will. As has been heretofore shown Mr. Justice CULLEN said that the provision for accumulation was invalid. In the accountings in the Surrogate's Court nothing was directed to be done in reference to the validity of the direction for accumulation save to order that the surplus income should be added to the principal of the trust funds and paid as directed by the will, or, in certain cases, that in the event of the death of either daughter without issue the share of the one so dying should fall into the residuary estate. Nothing was done by the trustees or by any one else in reliance upon these decrees which cannot now be undone; no moneys were paid out upon the faith of such decrees; no liabilities incurred by the trustees thereunder, and all the provisions upon this subject in the decrees amount to no more than a direction as to the manner of keeping the accounts of the estate and never constituted a judicial declaration that the provision for accumulation was valid. The surplus of the accumulations is still in the hands of the trustees. This, it seems to me, brings the case within the doctrine laid down in *Bowditch* v. *Ayrault* (138 N. Y. 222, 231), where the court said: "The part payments made by the trustees upon the several past accountings made by them, must remain unaffected by our decision herein. Those accountings have been approved by the surrogate and must be regarded as conclusive upon all past transactions and payments covered by them. They form no bar, however, to the proper decision of the question now presented as to the distribution of the property now in the hands of the trustee." So in *Matter of Hoyt* (160 N. Y. 607, 618)

the court held: "The decrees in the former accountings are binding upon the daughter of the testator as to the amounts therein involved, and will not be affected by our decision herein, but this does not prevent her from raising the question now as to the distribution of the money in the hands of the trustees." And in *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.* (151 App. Div. 166, 172) the court said: "It is contended further that the plaintiff is estopped from maintaining the action by the proceedings in the Surrogate's Court, for the probate of the will, the decree upon the final accounting, his acquiescence in all that has been done in administering the estate and the distribution of the income, extending over a period of seventeen years, with full knowledge on his part of all the circumstances and the provisions of the will. I do not see how the probate of the will, although at the instance of the plaintiff, can have that effect, as the question of the construction of the will was not involved in that proceeding, and although the decree upon the accounting is conclusive as to the plaintiff upon the distribution of the fund up to that time, including the setting aside and transferring of the trust fund to the trust company (*Chester* v. *Buffalo Car Manufacturing Co.*, 70 App. Div. 443; 183 N. Y. 425), I do not think the decree in effect determined the validity of the clause of the will in question or controlled the disposition of the fund thereafter. That question was not, as it seems to me, involved in the accounting." In reversing this judgment upon other grounds (213 N. Y. 525) the court said: "The defendants cannot defeat this action upon the ground of estoppel by reason of the proceedings in the Surrogate's Court upon the probate of the will and the decree on the final accounting in connection with the alleged acquiescence of plaintiff in the distribution of the income. Upon the probate of the will or upon the final accounting by the executors, the surrogate was not asked to, neither did he construe the provisions of the will of the testator. The only issues determined by the surrogate were, *first*, the capacity of the testator to make a will and that the same was properly executed; *secondly*, that the executors had properly accounted for all of the property of the testator. The right of plaintiff to the amount of the trust fund as residuary legatee by reason of the

invalidity of the fourth clause of the will was not an issue before the surrogate or determined by him in either of the proceedings. The decrees made by the surrogate did not involve the questions at issue in this action, and were not operative as an estoppel. (*Rudd* v. *Cornell,* 171 N. Y. 114.)" The court held that the decree upon the accounting was conclusive upon the plaintiff in that action as to the distribution of the funds of the estate up to the time of the entry of the same. These cases, it seems to me, establish the proposition that despite prior concededly erroneous directions as to the distribution of the property in the hands of the trustees, where such property has not been distributed but still remains intact, the court can, in a suitable action, give the proper decision of the question as to the validity of any provision of the will. There is no doubt that in this case the proper decision of the question before the court is that the provision for accumulation was and is invalid. The same argument leads to a similar conclusion as to the force to be given to the judgment in the one Supreme Court action before the present, for there the question of the validity of this direction for accumulation was not raised, nor was anything done upon the faith of that judgment by the trustees or any one else, which affects the present decision. The appellants claim that the Statute of Limitations bars the Rogers estate from asserting its right to have the provision adjudged invalid, but that statute has no application to the present action which is one brought by the trustee itself for the construction of the will; and as between the trustee and the *cestui que trust,* in the case of an express trust, the Statute of Limitations has no application and no length of time is a bar. (Perry Trusts [6th ed.], § 863; *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.,* 213 N. Y. 541; *Matter of Camp,* 126 id. 389; *Zebley* v. *Farmers' L. & T. Co.,* 139 id. 461.) None of the prior proceedings or actions having been for a construction of the will in which the provision in question was involved, and no final disposition of any property having been made by the trustees upon the faith of such decrees or judgment, there is no estoppel nor does the doctrine of *res adjudicata* bar the proper construction of the clause of the will under consideration and a declaration that the same is invalid.

The judgments appealed from should, therefore, be in all respects affirmed, with costs to all parties appearing upon this appeal payable out of the fund.

LAUGHLIN, J., concurred.

Judgment modified as stated in opinion, and as modified affirmed, with costs payable out of the estate to all parties appearing and filing briefs.   Order to be settled on notice.