## In the Matter of the Estate of JOHN HAYDOCK, Deceased.

Surrogate's Court, New York County, December 9, 1935.

*Mitchell, Taylor, Capron & Marsh* [*E. W. Cooney* of counsel], for the accountant, City Bank Farmers Trust Company, as executor and trustee.

*Beverly R. Myles* [*Frank C. Delaney, Michael J. Kiely, Jr.,* and *Beverly R. Myles* of counsel], for Frank C. Delaney, as committee of the person and property of Lillian Haydock White, incompetent.

*Frank W. Sperling*, special guardian.

*J. W. Drake*, for John Haydock the Third and Walter H. Haydock, as executors of John Haydock, deceased trustee.

FOLEY, S.   Various questions arise upon the report of the referee and the exceptions filed thereto in this contested accounting proceeding.   These questions involve generally the power and authority of the trustee, the City Bank Farmers Trust Company, to invest in certain participations in mortgages which now constitute assets of the trusts.

The committee of the incompetent, Lillian Haydock White, a daughter of the testator and a life tenant and contingent remainderman under the will, and the special guardian of the infant remainder-

men contend that the investments in participations of mortgages were made by the corporate trustee in disregard of its duty and in violation of the specific terms of the will. It is contended also that in one case the mortgage in which participations were allocated to the trusts was placed upon incumbered property and was, therefore, unauthorized and illegal. In another case, the mortgage, it is urged, was in excess of the statutory limit of the value of the real property.

A preliminary question of the construction of the will has also arisen upon the exceptions filed by the trust company to the report of the referee as to the limitations upon the power of the trustees to make investments. There is also involved the effect of a decree of this court made in 1921 upon a prior accounting which is claimed by the trustee to be *res adjudicata* and conclusive in its favor. Upon these preliminary questions, the provisions of the fifteenth clause of the will become important. That clause reads as follows:

" *Fifteenth.* In making investments and reinvestments of the principal or any part of the principal of any trust fund created by this my will, I direct my executors to make such investments or reinvestments in bonds of the State of New York, or of Cities in the State of New York, or in such securities as Savings Banks in New York State are authorized by laws of that State to invest their funds in."

The trust company contends that the restricted power of investment under this clause was limited to the *executors* and was not intended by the testator to apply to the *trustees* appointed by the will.

The committee and the special guardian on the other hand urge that the limitations in clause fifteenth were intended to apply to the trustees as well as the executors. The referee has properly sustained the latter contention and has thereby held that certain investments were unauthorized and illegal.

An analysis of the general terms of the will, and the specially applicable provisions, justify this conclusion. The trusts involved in this accounting were created by the eleventh clause. In it the testator directed that his residuary estate be divided into four equal parts and he gave, devised and bequeathed each one and all of said parts " *to my executors and trustees* and their successors " to hold each one and all of said parts in trust. Thereafter, he provided for the creation of four trusts for the benefit respectively of his daughters, Lillian Haydock and Aimee Collier, and his sons, James E. Haydock and John Haydock. There were certain secondary life estates and remainder provisions which are not of great importance here. In the paragraphs dealing with these trusts the

testator or the draftsman did not repeat the words " executors and trustees " in defining certain duties of these persons. There are subsequent directions, for example, to " my said trustees " merely, without repetition of the words " executors and trustees." The failure to repeat the full phrase is not important since the representatives referred to were those antecedently described as executors and trustees. The clause which specifically designated the names of the fiduciaries is a general appointment of " executors of this my Will, and trustees of the several trusts created by this Will."

When the testator came to provide for a limitation in paragraph fifteenth upon the power of the " executors " to invest in a limited class of securities, he plainly used the word " executors " as including his trustees. The language of paragraph fifteenth emphasizes this intent, particularly when construed with the general plan of distribution. I find no indication of a purpose to restrict the executors or to broaden the powers of the trustees only. It is urged by the corporate trustee that certain trust powers were conferred upon the executors to which paragraph fifteenth might have applied. These functions, however, are so unimportant in the general plan of the will as to compel the rejection of this contention. Under the fourth paragraph of the instrument an annuity of $180 a year to a nephew of the testator was directed to be paid by the executors and there was a further direction that for the purpose of producing the annuity the executors were to set apart and hold in trust a sum of money sufficient to produce such annuity. At the time of death the actuarial value of this annuity was only $1,500 and the fund necessary to produce it would not have exceeded $4,500. The only other possible trust which the executors might have been empowered to hold was, in effect, a deferred legacy of $1,000 to another nephew of the testator. The aggregate of the trust funds necessary to provide for the two nephews was $5,500, whereas the capital value of the four residuary trusts approximated $520,000. In view of the employment by the testator in his gift of the residuary trust of the words " executors and trustees " and his references to trustees alone in the residuary clause and the further reference to executors, only, in clause fifteenth, it is clear that the will did not recognize, with any technical accuracy, the distinction between these terms. Restriction on the right of the executors to invest in savings bank securities was undoubtedly intended to similarly encompass the authority of the trustees. The language of the will relating to the testator's personal representatives should " be considered with reference to the duties to be performed and not as if used by the testator in its technical meaning." (*Matter of Kohler*, 231 N. Y. 353, at p. 365; *Matter of Leonard*, 218 id. 513,

520; *Mee* v. *Gordon*, 187 id. 400; *Jewett* v. *Schmidt*, 83 App. Div. 276.) Finally the context of clause fifteenth itself indicates an intention to impose limitations upon the trustees as well as the executors. The direct reference is to the making of " investments and reinvestments " of the principal *or any part of the principal* of any trust fund. The only division of any trust fund into parts was that contained in the residuary trust in its partition into four equal shares. Moreover, the command of the testator applied " to any trust fund." Even with the broadest interpretation, the executors were confined to only one trust fund — that to produce the annuity for the testator's nephew in paragraph fourth. The use of the word " any " was plainly distributive in character and comprehended all of the several trust funds given to the executors and trustees by the residuary gift.

It is incomprehensible that the testator by the fifteenth clause intended to create an extremely conservative class of investments for the protection of his nephews, but did not plan to afford protection to his own children and their issue, who were the principal objects of his bounty under the residuary trusts.

Under this interpretation of the will, the trustees were limited to investments which a savings bank is authorized to make under the provisions of section 239 and the other pertinent provisions of article VI of the Banking Law. The conduct of the trustees in making the investments complained of here must be tested by that statute. (*Matter of Doblin*, 152 Misc. 406.) The exceptions of the trust company upon this phase of the case are, therefore, overruled.

Upon the contention of the corporate trustee that the decree of December 29, 1921, was conclusive and *res adjudicata*, I am in accord with the opinion of the referee. He held that the decree was not conclusive. That decree was rendered in a proceeding brought for the construction of the will and the judicial settlement of the account of the executors. The sole question presented to the court was whether the will authorized and empowered the executors to constitute and establish the respective trust funds created by the residuary clause in whole or in part from any securities or investments which were originally owned by the testator and to continue to hold such securities as trustees. In a tentative set-up of the trust, set forth in the account, the trustees attempted to retain certain bonds and stocks which were clearly non-legals for the investment of trust funds. The will specifically authorized the retention of mortgages and their inclusion in the trust funds provided by the will. The surrogate who construed the will in that proceeding properly determined that the retention of non-legal bonds and stocks was unauthorized. The only question submitted to him, however, was as to retention. The powers of the executors

and trustees to make new investments were not involved. The determination of the surrogate prohibited the continuance of the non-legals. His decision and decree were in no way conclusive on the questions involved here as to whether the executors and trustees were limited to savings bank securities in the making of new investments, or on the other hand, were permitted to invest in the general class of legals. The decree was, therefore, conclusive only upon the exact issue determined and is not *res adjudicata* on the issues involved in the pending accounting. (*Matter of Hoyt*, 160 N. Y. 607; *Griffen* v. *Keese*, 187 id. 454; *Central Trust Co.* v. *Falck*, 177 App. Div. 501; affd., 223 N. Y. 705; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 id. 304.)

The alleged practical construction of the will under which it is claimed that for a period of years legal investments were made by the trustees rather than those limited to savings banks cannot be employed to defeat the rights of the incompetent nor of the infants. There is no foundation in fact for the argument that there ever was such a practical construction of the will because the question was never raised in the prior accountings. There could be no acquiescence by the infants, nor may the prior decrees in any way affect the tests of legality or authority which have arisen by reason of new investments made since the last date of the account covered by the previous accounting.

In view of my finding that the trustees were limited, under the terms of the will, to investments legal only for savings banks in this State, the investment in a participation in the so-called Smalenbach mortgage was correctly found by the referee to be illegal. The property was appraised for the trust company, prior to the placing of the mortgage, at the sum of $4,250,000. The legal limit of a mortgage for a savings bank under section 239 of the Banking Law is sixty per cent of the appraised value of improved real property. The legal limit placed by the statutes upon trustees generally is sixty-six and two-thirds per cent. (Dec. Est. Law, § 111, and Pers. Prop. Law, § 21.) Sixty per cent of the value of the property involved here was $2,550,000. It was conceded that the total amount of the mortgage was $2,800,000. It is plain, therefore, that the mortgage was actually placed in an amount exceeding the legal maximum. This investment was undoubtedly made by an officer or subordinate of the trust company in ignorance or by oversight of the restrictions contained in the will. In view of the finding that the allocation of this participation to one of the trusts constituted a violation of the terms of the will, the further determination of the referee that the investment was speculative and carelessly made was unnecessary. In addition the evidence was insufficient to justify the findings of fact and conclusion of law upon

this phase of the case. The exceptions to findings of fact Nos. 61 and 63 and conclusion of law No. 16 are sustained and such findings and conclusion are overruled and will be eliminated from the report as confirmed by me.

A further question arises as to the investment by the trustee in three participations in the so-called L. M. Blumstein mortgage. These participations were part of a consolidated mortgage of $600,000 on certain property located on One Hundred and Twenty-fifth street, borough of Manhattan, city of New York. The mortgage was placed as a result of a complete transaction. The building was occupied as a unit by a department store. Originally, the property was divided into two parcels. One was designated as parcel A with a frontage of sixty-two feet. The adjoining parcel, designated as parcel B, has a frontage of twenty-five feet. The mortgage was and is a first lien on parcel A and is a second lien on parcel B, being subject to a first mortgage of $100,000 on that specific parcel. The referee has found illegality in this investment because the statute as to savings bank investments requires that the real property on which a mortgage is placed shall be " unincumbered " (Banking Law, § 239, subd. 6). A similar provision is contained in section 111 of the Decedent Estate Law in its application to legal investments for trustees generally. Various arguments are advanced by the corporate trustee to support the legality of these participations. It is urged that the value of parcel A was sufficient to justify the placing of the loan without regard to the lien of the second mortgage on the adjoining property. It is also urged that if the first mortgage on parcel B was foreclosed, it would be possible to build a wall dividing the building, which has been operated as a unit, into two separate structures at a cost of $9,000. These arguments are merely arguments of expediency. The statute is plain in meaning. It commands that the property upon which the mortgage shall be placed shall be free of any incumbrance. The legislative intent needs no exposition. It is grounded upon the clearest principles of experience and common sense. The beneficiaries of the trust are not required to bear the expense of a division of the unit structure in the event of a foreclosure by a first mortgagee on part of the property. The law does not authorize a spreading agreement by which the mortgage becomes a junior lien upon adjoining property. The referee, therefore, correctly found that the investment did not meet the requirements of the will and the statute.

The determination of the referee as to the illegality of certain other investments in the so-called Lerner certificate and the " 7 East Burnside Avenue " participation has become academic. The Lerner certificate of participation was unauthorized under the

terms of the will. (*Matter of Doblin*, 152 Misc. 406.) The Burnside avenue certificate was unauthorized and illegal because it exceeded the legal limit of a mortgage available to saving banks. Since the date of the referee's report, however, the trust company has taken up the former investment and substituted cash to the full par value in its place in the trust funds. The participation in the so-called " 7 East Burnside Avenue " mortgage has been paid in full by the owner of the property. The issue as to the so-called Hoagland participation has likewise become academic by reason of the repurchase by the trust company of this investment at its full value.

Only one other modification of the learned referee's report is required to be made. He has found in respect of the Smalenbach and Blumstein participations that while they were illegal, no financial loss occurred to the estate in connection with these investments. He has further found that if and when loss is established, a decree should be entered directing the City Bank Farmers Trust Company and the estate of John Haydock, the deceased trustee, who consented to these investments, to make good such loss. His findings and conclusions are inconsistent with the determination that the participations were unauthorized and illegal. The life tenant of one of the trusts is an incompetent. She is also a contingent remainderman as to three of the trusts. Although she was a former trustee, the investments which are complained of were made after the adjudication of her incompetency. The infants are contingent remaindermen of all four of the residuary trusts. The only party who expressly consented to these investments was the former trustee, John Haydock. His interest as life tenant has been extinguished by his death. His estate has a contingent interest in the remainders. The protection, however, of the rights of the incompetent and the infant remaindermen require a surcharge and a direction that the trust company and the estate of the deceased trustee now pay back into the trusts the original cash invested in the illegal participations. (*King* v. *Talbot*, 40 N. Y. 76; *Adair* v. *Brimmer*, 74 id. 539, at pp. 554 and 568.)

The alleged acquiescence of the adult life tenants does not exonerate the trustees from restoring to the trusts the moneys invested in these participations. By consenting to and participating in these investments, John Haydock and his estate were estopped to question their propriety. If the trust company alone makes good this surcharge, the decree may reserve its right to recover any loss from the estate of John Haydock, or to set off the loss against any part of the remainders which may ultimately vest in his estate upon the termination of the trusts. (*Matter of Hall*, 164 N. Y. 196.) No reason has been disclosed why such a surcharge or an immediate direction to repay should be postponed to await a delay of years or

an accounting by the corporate trustee in the distant future. In this connection, the decision in *Matter of Hall* (*supra*) has no application. There the trustees had invested in the stock of an umbrella company. Certain of the beneficiaries had consented to the investment. A *devastavit* was found. At the time of the accounting the amount of the loss in the stock had been established. As the opinion of the Court of Appeals states, two-thirds of the investment was lost. All that the *Hall* case decided was that if the beneficiaries who consented to the illegal or unauthorized investment ultimately obtained the remainder, they would be required to share the actual loss on the security. The participations here were illegal under the terms of the will. The non-assenting beneficiaries are not required to wait, nor is the court justified in permitting the continuance of these improper investments within the trusts. They should be replaced promptly by cash for immediate reinvestment in the class of securities prescribed by the will — either the bonds of the State of New York or of the cities of this State, or in savings bank investments.

The remaining exceptions to the report and the findings and conclusions of the referee are overruled. The report of the referee, except as modified by this decision, is confirmed. ·

Submit decree on notice settling the account accordingly.